The STATE of Oklahoma ex rel. W. A. VILLINES, Plaintiff,

v.

Harold FREEMAN, Chairman; Ray C. Jones, Vice Chairman; and Wilburn Cartwright, Commissioner, Composing the Corporation Commission of the State of Oklahoma, Defendants.

No. 39935.

Supreme Court of Oklahoma.
March 27, 1962.

Paul Brown, Oklahoma City, for relator, W. A. Villines.

H. E. Rorschach, Tulsa, Jack L. Rorschach, Vinita, Hal T. Gibson, Oklahoma City, for intervenor, Oklahoma Independent Petroleum Assn.

T. H. Marshall, in pro. per., George H. Bowen, Tulsa, Norton Standeven, John Wimbish, Oklahoma City, for intervenor, Kansas-Oklahoma Div., Mid-Continent Oil and Gas Assn.

Roy E. Grantham, Ponca City, amicus curiae.

JACKSON, Justice.

The State of Oklahoma, ex rel. W. A. Villines (hereinafter called petitioner), has applied to this court for a writ of prohibition against the members of the Oklahoma Corporation Commission, "prohibiting them from complying or attempting to comply with the provisions of Senate Bill No. 266 of the 1961 Legislature of the State of Oklahoma, except as to such future general rules and regulations of state-wide application as may be issued by the Commission, and for such other relief as may be appropriate".

An alternative writ has been granted in accordance with the petition.

The essential facts are not in dispute. Senate Bill No. 266 (75 O.S.1961 § 251 et seq.) requires all state agencies and instrumentalities having rule-making powers to file copies of their rules and regulations, with certain exceptions, with the Secretary of State and the State Librarian and Archivist. It further requires the State Librarian to publish them in the manner set out, and provides that any rule or regulation not so filed and published shall be "void and of no effect". Similar requirements are made as to any future amendments or revisions of the rules.

In his petition, petitioner states that the Corporation Commission has taken the position that all of its rules, regulations *and orders* that have ever been issued, exceeding 40,000 as applied to oil and gas conservation alone, must be filed and published in accordance with Senate Bill No. 266; that it is a physical and financial impossibility for such to be done at the present time; that because of the provision of the statute that rules and regulations not published shall be "void and of no effect", he is in danger of losing valuable vested property rights; that the relief to which he is entitled is not available in the District Court, but that it is within the superintending control of this court by virtue of 52 O.S.1961, § 111.

No question is raised as to the right of petitioner to institute this proceeding. No briefs have been filed by the Corporation Commission, although counsel for the Commission, with others, appeared in oral argument before this court.

It should also perhaps be noted that no question is raised here as to the right of the Commission to make rules and regulations, or the extent or content thereof.

In his brief, petitioner urges three propositions. Two of them involve the question of what was meant by the phrase "rules and regulations" as used in Senate Bill 266. We therefore consider that question first.

Although "rules and regulations" is not defined in Senate Bill No. 266, its general meaning has by usage and judicial and legislative interpretation become well established.

"* * * The words 'ordinances,' 'rules,' 'regulations,' and 'by-laws' are synonymous terms." State ex rel., Krebs v. Hoctor, 83 Neb. 690, 120 N.W. 199.

"* * * 'Rules' * * *, in a legal sense, mean laws." In re Higbee, 4 Utah 19, 5 P. 693.

"* * * A rule must necessarily be of general application. A regulation must apply impartially." State Racing Commission v. Latonia Agricultural Ass'n., 136 Ky. 173, 123 S.W. 681, 25 L.R.A.,N.S., 905.

Webster's Third New International Dictionary (Unabridged) gives the following definition of "rule": "a prescribed * * guide for conduct or action: a regulation or principle".

The same authority defines "regulation" as "a rule or order having the force of law issued by an executive authority of a government * * * as * * * (3) an administrative order issued by an executive department or a regulatory commission of the U. S. government to apply and supplement broad congressional legislative enactments".

Several states have statutes similar to our Senate Bill 266, among them California and Wisconsin. The applicable California Stat-

ute (32 West's Annotated California Code, Government, Sections 11370–11385) contains a definition of "regulation" which includes a requirement that it shall be "of general application". The Wisconsin statute defines "rule" as follows:

"'Rule' means a regulation, standard, statement of policy * * * (including the amendment or repeal of any of the foregoing) of general application and having the effect of law, issued by an agency to implement, interpret or make specific legislation enforced or administered by such agency or to govern the organization or procedure of such agency." Wisconsin Statutes, Chapter 227, Sec. 227.01.

For a legislative expression of the definition of "regulation" as applied to the Oklahoma Alcoholic Beverage Control Act, see 37 O.S.1961 § 506(22) to the following effect: "'Regulation' means a formal rule of general application promulgated by the Board as herein required".

With regard to the State Board of Chiropody, the section of the statute concerning rules and regulations contains a requirement that "Each such rule and regulation shall be general in effect * * *". 59 O.S.1961 § 159.1.

With regard to the State Board of Agriculture, the statute provides that "the rules and regulations * * * of said Board * * * shall have the force and effect of law and be judicially noticed and considered as such where such rules, orders and regulations are of general application * * *". 2 O.S.1961 § 2–7.

The creation of administrative boards, agencies, commissions and similar instrumentalities, with rule-making powers, is an incident of the development of what is called "administrative law". "The social and economic problems of a power age with its increased governmental control and supervision of private activities requiring for their solution the services of specialists and experts have created a new sphere of governmental activity embracing in itself all three aspects of governmental powers, legislative, executive and judicial. * * * These administrative complements are euphemistically called 'filling in the details' of a policy set forth in the statutes. But the 'details' are of the essence; they give meaning and content to vague contours. The control of banking, insurance, public utilities, finance, industry, the professions, health, and morals, in sum, the manifold response of government to the forces and needs of modern society, is building up a body of laws not written by legislatures, and of adjudication not made by courts. * * *. A systematic scrutiny of these issues and a conscious effort toward their wise solution are the concerns of administrative law." 42 Am.Jur. Public Administrative Law, Section 4. "One of the greatest practical problems in the field of administrative legislation has been, and to some extent still remains, to determine what rules and regulations have been adopted." 42 Am.Jur. Public Administrative Law, Sec. 97. This undoubtedly is the reason for the adoption of Senate Bill No. 266.

■ Considering the meaning that has been ascribed to the phrase "rules and regulations" in other jurisdictions; the meaning which has been given to it by our own legislature in specific instances such as those mentioned above; and the problems which exist generally in the comparatively new field called "administrative law", we conclude that "rules and regulations", as used in Senate Bill No. 266, includes only those rules and regulations, both substantive and procedural, which are legislative in nature, and are of general effect and have state-wide application.

■ The phrases "rules and regulations" and "orders" have sometimes been used as if they were synonymous. In an amicus curiae brief filed herein by the principal author of Senate Bill No. 266, it is pointed out that the word "orders" does not appear therein, and it is therefore important to distinguish between these phrases. "The rules and regulations of a public administrative agency have been distin-

guished from the orders or determinations of such an agency in that the latter are actions in which there is more of the judicial function and which deal with a particular present situation, while the former are actions in which the legislative element predominates". 73 C.J.S. Public Administrative Boards and Procedure, § 92. Thus, Senate Bill No. 266 imposes no duty upon the Corporation Commission to file or publish its *orders,* past or future.

We now consider the propositions argued by petitioner in his brief. The first one is to the effect that where the title to a legislative act is so broad and general as to be ambiguous and indefinite and without meaning, the act is void and of no effect. The second one is that if Senate Bill 266 is applicable to *all* orders, rules and regulations of the Corporation Commission, it is unconstitutional. In each case, the question raised is the meaning of the phrase "rules and regulations". Since such phrase has a definite and unambiguous meaning, and does not apply to *all* rules and regulations, or *any* orders, of the Corporation Commission, these propositions are without merit.

■ The third proposition is that "it is the court's policy to construe acts of the legislature so as to preserve their constitutionality if it can be fairly done". This is of course a correct statement of the law, and we have followed it in our determination of the meaning of the phrase, "rules and regulations".

We now consider various arguments raised by amici curiae and intervenors in this proceeding.

Oklahoma Independent Petroleum Association, an intervenor, argues that "the act is a collateral attack on each and every order, rule or regulation promulgated by the Corporation Commission at any time and is an attempt to regulate a constitutionally established commission and divest the Oklahoma Supreme Court of its constitutional and statutory authority over the Corporation Commission".

■ The Corporation Commission is a constitutionally created body (Oklahoma Constitution, Article 9, Sections 15–17); its powers and duties are set out generally in sections 18 through 34 of the same article. However, section 35 gives the Oklahoma Legislature power, after the first Monday in January, 1909, to "alter, amend, revise or repeal" sections 18 through 34. The Corporation Commission is therefore subject to the will of the Legislature, which may change its powers and duties, and also the statutory jurisdiction of the Supreme Court insofar as appeals from actions of the Commission are concerned (Sec. 20) It follows that a statute, such as the one before us, which merely adds to or supplements the powers or duties of the Corporation Commission is not unconstitutional or invalid merely because such powers or duties are not specifically enumerated in the Constitution.

■ Intervenor also cites 52 O.S.1961 § 111, and charges that Senate Bill 266 is contrary to said statute, which provides that "No collateral attack shall be allowed" upon orders, rules and regulations of the Commission, but that "the sole method of reviewing" such shall be "by appeal * * * to the Supreme Court". However, Senate Bill 266 does not provide for any "collateral attack"; it sets up no new proceeding or method by which rules and regulations may be challenged, but leaves parties to proceedings before the Commission exactly where they were, insofar as review or appeal is concerned.

Intervenor also argues that the title of Senate Bill 266 is fatally defective and is an attempt to amend the constitution by legislation. The attack on the title to the act is based on the assumption that it requires that *all* rules and regulations (and, by inference, orders) of the Commission must be filed and published. As we have seen, this is not the case. Only legislative rules and regulations of the Commission, of general effect and state-wide application are required to be filed and published. Specific *orders* of the Commission (under which vested property rights might conceivably be affected) are not included. Thus, no question of due process is presented.

This intervenor last argues that "S.B. 266 in effect reposes absolute and unregulated discretion in the Corporation Commission as to what may constitute a rule or regulation" and is therefore unconstitutional. Once again, the argument rests upon the assumption that the phrase "rules and regulations" has no definite and unambiguous meaning, but is left entirely to the discretion of the Commission. We have previously determined that this is not the case.

By its own terms, Senate Bill No. 266 applies to "Every agency, including any authority, board, commission, department, instrumentality, office, or officer of the State of Oklahoma, that possesses rule-making powers". It applies to all rules and regulations of such officers and bodies except those which (1) pertain to an agency's internal operation and organization only; (2) pertain to proclamations of the Governor; and (3) concern the internal management and operation only of an institution, including institutions of higher education.

Because of the broad sweep of Senate Bill No. 266, and the large number of agencies and instrumentalities to which it applies, a definition of "rules and regulations" more detailed and comprehensive than the one we have set out herein is neither practical nor advisable, and it is inevitable that problems will arise in the future where specific rules and regulations are concerned.

We therefore refer, for purposes of illustration only, to some of the statutes which authorize a board or commission to promulgate rules and regulations of a sundry nature, and to which Senate Bill No. 266 would seem to apply at least in part. In referring to these sections of the statutes we do not mean to imply that all rules and regulations authorized thereunder must be filed with the State Librarian and Secretary of State, but only those rules and regulations which fall within "rules and regulations" as elsewhere defined in this opinion. See State Board of Agriculture (2 O.S.1961 § 8–28); Oklahoma Alcoholic Beverage Control Board (37 O.S.1961 §§ 506(22), 514(2), 517 and 565); Corporation Commission (52 O.S.1961 § 321); Oklahoma Liquefied Petroleum Gas Board (52 O.S.1961 § 420.3); Board of Veterinary Medical Examiners (59 O.S.1961 § 681); State Personnel Board (74 O.S.1961 § 805); and Oklahoma Planning and Resources Board (74 O.S.1961 § 351o).

We would emphasize that the above list is for illustrative purposes only, and is neither conclusive nor exclusive.

Strained and technical interpretations of "rules and regulations" will necessarily lead to time-consuming and vexatious litigation, and a common-sense approach to this problem is desirable, keeping in mind the purpose of the act.

As above noted, an alternative writ has been granted herein, prohibiting the Commission from "complying or attempting to comply with the provisions of Senate Bill No. 266 * * * except as to * * * *future* general rules and regulations * * *". In the briefs, no distinction is made between *past* and *future* rules and regulations, and no reason appears why any such distinction should be made. By its plain terms, Senate Bill 266 requires the filing and publication of all past general rules and regulations which are still in force and effect, as well as future amendments and revisions.

The alternative writ is withdrawn. Since Senate Bill 266 does not apply to *orders*, a permanent writ of prohibition is granted, prohibiting the Commission from attempting to file and publish its past or future *orders*. It should of course comply with the statute with regard to its past or future rules and regulations as herein defined.

It is so ordered.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JOHNSON, IRWIN and BERRY, JJ., concur.