## PUBLIC SERVICE COMPANY OF OKLAHOMA, Appellant,

v.

## The STATE of Oklahoma, Appellee.

### No. 55147.

Supreme Court of Oklahoma.

Jan. 12, 1982.

Rehearing Denied April 27, 1982.

·Rainey, Ross, Rice & Binns, Oklahoma City, Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, for appellant.

Robert D. Stewart, Jr., Gen. Counsel, Eddie M. Pope, Appellate Counsel, Pat Shore, Legal Intern, Oklahoma City, for appellee.

DOOLIN, Justice:

### I—FACTS

Appellant, Public Service Company of Oklahoma (PSO), sought approval of a 70 million dollar issuance of long-term securities by the Corporation Commission (Commission). The Commission said the Legislature intended the Commission to examine *need* before extending the security privilege to a public utility. The Commission was willing to approve securities for the nearly completed Northeastern Station but declined approval of securities for Black Fox until convinced of its need. PSO has appealed the Commission's findings and order. It requests this Court remand Order No. 166989, entered in Cause No. 26,024, or grant its application for issuance of securities on appeal.

### II—ISSUE

The issue in this case is whether the Oklahoma Corporation Commission has the authority to deny PSO's application for the issuance of securities until the necessity of proposed construction of Black Fox Station is demonstrated to the Commission.

PSO also raises the issue of whether the Commission's disapproval of application for issuance of securities for construction of a nuclear power plant was an attempt to exercise authority in an area preempted by federal law.

Since we find the Commission does not have the statutory authority to refuse the issuance of securities, based on a requirement to demonstrate the necessity or need of the underlying purpose, we find it unnecessary to answer the primacy of federal regulatory process as to nuclear power plants.

## III—DISCUSSION

The Commission interprets 17 O.S. 1971 § 181 et seq. as vesting it with the power to deny the issuance of securities when it is not convinced of the necessity of the underlying purpose for the securities. We disagree with the Commission's interpretation.

The sections relevant to this case are sections 182 and 184. Section 182 provides:

The power of public utilities to issue securities, in case of public utilities organized under the laws of this State, and to create liens on property in this State to secure the payment of evidences of indebtedness, in case of public utilities organized under the laws of any other state or foreign country, is a *privilege*, the right of supervision, regulation, restriction and control of which, is and shall continue to be vested in the State, and such power shall be exercised as provided by law and under such rules and regulations as the Commission may prescribe pursuant to law. (Emphasis supplied).

The Commission places emphasis on Section 182's description of issuing securities as a "privilege" subject to "supervision, regulation, restriction and control." We do not accept the Commission's broad interpretation of this phrase which would allow the Commission to exercise its discretion in denying the issuance of securities in an arbitrary and capricious manner. Section 182 also provides "such power shall be exercised as *provided by law* and under such rules and regulations as the Commission may prescribe *pursuant to law*." (Emphasis ours). Thus the scope of the Commission's authority is *limited* by law. As we stated in *Merrit v. Corporation Commission*, 438 P.2d 495 (Okl.1968):

"The Corporation Commission is a tribunal of limited jurisdiction and authority as is expressly or by necessary implication conferred upon it by the Constitution and statutes of this state."

We held in *O. G. & E. v. Corporation Commission of Oklahoma*, 543 P.2d 546 (Okl.1977) that the Corporation Commission did not have the power to regulate, supervise and control the internal management of a public utility to the extent that it could prohibit the construction of the proposed project by the power company even though it was alleged that the power company's project was not necessary for it to supply electricity to its customers. We held the Oklahoma Constitution 1971 Art. 9 §§ 18, 19, p. 550, which gives the Corporation Commission power to regulate and control utilities, must be construed to refer to the obligations of a corporation with reference to its *public duties*:

"Such additional powers are not new powers, but merely extensions or broadening of existing powers and may be established by the Legislature. However, if additional powers are conferred upon the Corporation Commission which are inconsistent with the Commission's Constitutional powers, compliance with the provisions of Art. 9, § 35 of the Oklahoma Constitution is mandatory. See *St. Louis-San Francisco Ry. Co. v. State* (Okl. 1953), 268 P.2d 845."

Art. IX, § 35 of the Oklahoma Constitution gives the Legislature the power to repeal or amend the powers of the Corporation Commission. But there is no indication that the legislative enactment of 17 O.S. 1971 § 184 attempted to alter, amend, revise or replace the Constitution. Therefore the construction of § 184 must be consistent with the Constitution.

As we said in O. G. & E., supra, p. 552:

"The Constitution simply does not confer upon the Corporation Commission, either expressly or by necessary implication, the power to regulate, supervise and control the internal management and control of a public utility to the extent that it may prohibit the construction of the proposed project by O. G. & E."

The Constitution prohibits the Commission's interpretation of § 184. No authorization is given to decide whether a utility may construct a new plant. The language of the statute refutes such an interpretation.

Section 184 provides:

"(1) A public utility organized under the laws of this State, may, when authorized by order of the Commission, and not otherwise, *issue securities* when *necessary* for the acquisition of property the construction, extension or improvement of its services, or for the discharge or lawful refunding of its obligations, or reimbursement of money actually expended from income from any source, or for any other corporate purpose authorized by the Commission." (Emphasis ours).

The Commission and PSO are in sharp disagreement as to the meaning of the word "necessary." The Commission contends that the proper interpretation of that word grants the Commission power to inquire into the necessity of the underlying *purpose* of the issue. We disagree. The determination that the statute provides is whether *issuance* of securities is necessary for the various corporate purposes listed. Had the Legislature intended the Commission's interpretation it would have drafted the statute to read, *"issue securities for the necessary acquisition of property . . ."* or words of like import. We find no such meaning as urged by the Commission present in § 184. Section 184 gives the Commission the power to decide the necessity of purposes, *other* than those enumerated.[1] The statute withdraws from the Commission the right to judge the need or necessity of the enumerated purposes.

█ The Legislature has provided that certain public utilities acquire certificates of public convenience and necessity, such as telephone companies (17 O.S. 1971 § 131), operators of water transportation lines (17 O.S. 1971 § 159.12), radio common carriers (17 O.S. 1971 § 202), motor carriers (47 O.S. 1980 Supp. § 166.2), and cotton gins (17

O.S. 1971 §§ 42–43). The conspicuous absence of electric utilities from such a list of statutes giving the Corporation Commission authority to approve new facilities strengthens our conclusion that the Legislature did not intend to require electric power companies to obtain certificates of necessity.

Our sister state's highest court interpreting a similar statute in *Kansas City, K. V. & W. Ry. Co. v. Bristow,* 101 Kan. 557, 167 P. 1138 (1917) stated:

"The litigants are far apart in their interpretation of the statute. The commission contends that the certification of securities to be issued by a public utility is a matter resting in its discretion, to be exercised according to its conception of the public welfare. The railway company contends that the commission has none but a ministerial duty to perform. Whenever a verified application in due form is presented, and any further pertinent information required by the commission is supplied, it becomes the mandatory duty of the commission to issue the certificate applied for. Neither contention is correct. The commission is not a general guardian over public utilities or the public and cannot, by an exercise of discretion over the issuing of bonds and stocks, control the activities of business enterprise. Business initiative and business sagacity are left free to improve what they deem to be opportunities, and a public utility has the right, under the statute, to issue whatever bonds and stocks may be necessary to carry out corporate powers, acquire property, construct and extend facilities, and maintain and improve service. The commission has no discretion to refuse to certify such securities. On the other hand, proposed securities must be necessary for some purpose designated by the statute, and the commission has full power to ascertain the truth of the statement, indispensable to an application for a certificate, that the capital stock to be secured

---

1. "... acquisition of property, the construction, extension or improvement of its services, or for the discharge or lawful refunding of its obligations ..." See 17 O.S. 1971 § 184.

is necessary and required for such purpose and will be used therefor."

We find this interpretation to be definitive, the Commission to determine only whether the issuance of the securities was necessary. In determining that PSO must convince the Commission that the underlying purposes was necessary, the Commission interfered with the management perogatives of PSO in violation of the Oklahoma Constitution.

We do not decide whether at some future rate adjustment hearing, the Corporation Commission may or may not take into consideration the value of or cost of debt retirement and service in fixing rates. We leave this question for another day.

REVERSED AND REMANDED for proceeding not inconsistent with this opinion.

IRWIN, C. J., REYNOLDS, Special Justice, and LAVENDER and OPALA, JJ., concur.

BARNES, V. C. J., and HODGES, SIMMS and HARGRAVE, JJ., dissent.

WILLIAMS, J., certified his disqualification: The Honorable LESTER A. REYNOLDS was appointed Special Justice in his stead.

BARNES, Vice Chief Justice, dissenting:

The language of 17 O.S. 1971, § 184, that states that a public utility *"may, when authorized by order of the Commission, not otherwise, issue securities when necessary"*, clearly was intended to give the Commission the authority to decide on the necessity for the issuance of securities, i.e., the reasonableness of a proposed project as it relates to and affects rights of the public.

The cardinal rule for construction of a statute is to ascertain the intention of the Legislature, and there is no room for statutory construction when intent of the Legislature is plainly expressed in an enactment.[1] Statutes are to be construed by reading

their provisions with the ordinary and common definitions of the words used, and we must assume that the law-making authority intended for them to have the same meaning as that attributed to them in ordinary and usual parlance.[2] The plain and obvious meaning of the above quoted language and the intent of the Legislature is that the Commission is to determine the necessity of the underlying purpose for the issuance of securities. The Legislature obviously felt that it would be better to determine the need for the proposed project before construction, rather than after completion of a proposed project or at the time the utility wishes such expenditures included in its rate base. Said authority of the Commission comports with its power to supervise and regulate the public duties and obligations of public utilities.[3]

I therefore respectfully dissent.

I am authorized to state that Justice HODGES, Justice SIMMS and Justice HARGRAVE join me in this Dissent.

---

1. *Udall v. Udall*, 613 P.2d 742 (1980); *Johnson v. Ward*, 541 P.2d 182 (1975).

2. *Riffe Petroleum Co. v. Great Nat. Corp., Inc.*, 614 P.2d 576 (1980).

3. *Okla. Gas & Electric Co. v. Corporation Com'n.*, 543 P.2d 546 (1975).