1997 OK 145

**PUBLIC SERVICE COMPANY OF OKLAHOMA, Appellant,**

v.

**STATE of Oklahoma, ex rel. CORPORA-TION COMMISSION, ex rel. Drew Edmondson, Attorney General of the State of Oklahoma, Appellees.**

No. 89340.

Supreme Court of Oklahoma.

Nov. 25, 1997.

See also Okl., 918 P.2d 733.

Jay M. Galt, Marjorie McCullough, of White, Coffey, Galt & Fite, Oklahoma City, for Appellant.

Larry Derryberry, Patrick D. Shore, of Derryberry, Quigley, Solomon & Naifeh, Oklahoma City, for Oklahoma Association of Electric Cooperatives.

Lawrence R. Edmison, Rachel Lawrence Mor, of Oklahoma Corporation Commission, Oklahoma City, for Oklahoma Corporation Commission.

J.W. Doolin, Lawton, for Cotton Electric Cooperative, Inc.

Hugh D. Rice of Rainey, Ross, Rice & Binns, Diane Goldschmidt of Oklahoma Gas and Electric Company, Oklahoma City, for Oklahoma Gas and Electric Company.

SUMMERS, Vice Chief Justice:

¶1 When a consumer of electricity in Oklahoma elects to change from one supplier to another, the Corporation Commission's Rule 60 controls the exchange. Public Service Co. of Oklahoma, (PSO) a potential "acquiring supplier" for customers wanting to switch, successfully attacked, in this Court, that portion of Rule 60 requiring the acquiring supplier to pass the costs of changeover to the consumer. Now PSO returns, after a hearing before the Corporation Commission, to attack those portions of the rule fixing the sum of money the acquiring electricity supplier must pay to the replaced supplier. Using the reasoning of our earlier opinion we must invalidate as unconstitutional those portions of the Rule.

¶2 The Rule under scrutiny is Rule 60, Oklahoma Corporation 165:35–1–2 and 165:35–11–3. In *Public Serv. Co. of Oklahoma v. Oklahoma Corporation Commission*, 918 P.2d 733 (Okla.1996), (*PSO I*) we focused only on the section which forced electric suppliers to pass the costs of changeover on to the customer. We held that particular section violated the Oklahoma Constitution, as it purported to grant the Commission powers it did not have under the Constitution, causing interference with the internal management of the company.

¶3 PSO filed this second appeal, which has arisen out of the Corporation Commission's amendment of Rule 60 after *PSO I* was decided. The Commission held a rulemaking hearing in which they sought to amend Rule 60 to permit, but not require, costs to be passed to the customer. At the hearing PSO urged that such amendment was not permissible, because *PSO I* had invalidated the

entire rule. In the alternative PSO urged that other sections of Rule 60—not the proposed amendments—violated the Oklahoma Constitution by regulating the internal management of the company.[1] The Commission voted unanimously to amend the Rule, and after hearing PSO's arguments as to the remaining sections of Rule 60, declined to declare them invalid. PSO filed this appeal, which has been retained by this Court.

¶ 4 Specifically, Rule 60 designates that an acquiring supplier, such as PSO, must purchase from the replaced supplier, such as a Rural Electric Cooperative,[2] all equipment used in supplying the customer, as well as an amount equal to three years of electricity costs. There is a formula set out in Rule 60 which must be followed. The Rule permits the replaced supplier to supply the figures which are plugged into the formula. PSO urged that this procedure resulted in inflated costs, and was interfering with the internal management of the company by dictating that the company pay a price that could be higher than the costs of installing new and updated equipment.

¶ 5 The first argument raised by PSO is that our decision in *PSO I* invalidated the entire Rule. It was the Commission's position that *PSO I* only invalidated one section: the section requiring that consumer changeover costs be paid by the consumer. We agree with the Commission's interpretation of the earlier case. Limiting language in the final paragraph of our opinion states that "insofar as" Rule 60 required the consumer to bear the changeover costs, it was unconstitutional. *PSO I*, 918 P.2d at 740. The opinion did not address the remaining sections of Rule 60.

¶ 6 So let us consider the constitutional argument now raised by PSO. It asserts that several sections which require the purchase of equipment by the acquiring supplier, and setting forth a formula to calculate those costs, interfere with internal management decisions. The sections in question read as follows:

(b) *In the event a consumer* utilizing such an electric consuming facility located in an area where two or more retail electric suppliers are entitled to serve *elects to change the supplier* providing retail service to such electric consuming facility, *the acquiring supplier must offer to purchase from the replaced suppler those facilities of the replaced supplier which are in place* to provide service to such electric consuming facility. The acquiring supplier must also offer to pay the replaced supplier an amount sufficient to offset the costs which the replaced supplier will incur as a result of the consumer's change of suppliers. *The offer made by the acquiring supplier shall be equal to the following:*

(1) The *original cost less depreciation* of those facilities of the replaced supplier which, pursuant to prudent engineering and operating standards, are reasonably necessary for and solely dedicated to providing retail service to the electric consuming facility changing suppliers. Where the original cost less depreciation for that electric consuming facility cannot be separately calculated, system-wide average cost shall be used.

(2) The *cost* of any facilities which, pursuant to prudent engineering and operating standards, are reasonably necessary *to reintegrate* the system of the replaced supplier in order that such system can continue to provide essentially the same retail service as was provided prior to the transfer and sale of facilities provided for in this Subchapter.

(3) *An amount* to the replaced supplier *for the costs of any generating and transmission* capacity which, at the time the consumer elects to change retail suppliers, is necessary for and dedicated to providing retail service to such electric consuming facility. Unless otherwise agreed by the acquiring and replaced

---

1. Although this issue was raised by PSO in its brief-in-chief, the Commission did not respond. After the filing of briefs we directed that a response be filed by the Commission addressing this constitutional attack. The Commission filed a response brief on September 25, 1997.

2. The Oklahoma Association of Electric Cooperatives filed an answer brief in this appeal, and considers itself a real party in interest.

suppliers, *this amount* shall be equal to three (3) times the *annual costs* incurred by the replaced supplier which are attributable to such generating and transmission capacity. For purposes of this Subchapter, *such annual costs* of the replaced supplier *shall be determined* by multiplying the kilowatt hour sales made by the replaced supplier to the electric consuming facility changing suppliers during the most recent twelve (12) month period (or an estimate of such sales in the event actual sales cannot determined for the last twelve (12) months) multiplied by the replaced supplier's average generating and transmission costs per kilowatt hour.

(A) When the replaced supplier is an electric cooperative, its average generating and transmission costs shall be defined as the average generation and transmission capital costs of its wholesale power suppliers(s), determined by multiplying the ratio of generating and transmission capital costs to total wholesale power costs as set forth in the wholesale power supplier's most recent cost of service study used to support a wholesale rate change, by the current average wholesale electricity cost per kilowatt hour paid by the replaced supplier.

(B) When the replaced supplier is an investor-owned utility, its average generating and transmission costs shall be determined by multiplying the ratio of generating and transmission capital costs to total utility costs as set forth in such replaced supplier's most recent cost of service study approved by the Commission, by the current average electricity cost per kilowatt-hour paid by the consumer changing suppliers.

3. Sections (e), (f), and (g) contain the amendments enacted to permit, but not require a consumer to pay changeover costs. No constitutional attack is directed at these sections.

4. In its most recent session the legislature passed a law dealing with the restructuring of electric utilities, hoping to enhance competition and thereby reduce rates.

(c) *The information necessary to make the calculations shall be furnished to the acquiring supplier by the replaced supplier* within ten (10) days of the acquiring supplier's offer to purchase.

(d) When the acquiring supplier has made an offer of purchase in compliance with (b) of this Section, *the replaced supplier shall* within thirty (30) days *accept such offer,* take such action as is necessary to *transfer ownership* and possession of the facilities *to the acquiring supplier,* and take any other action which is reasonably required to facilitate the change of retail suppliers to the electric consuming facility in a safe and orderly manner.

. . . .

(h) *In the event there is a dispute* or controversy over the amount required to be paid to the replaced supplier under this Section or if the replaced supplier has not taken the action required under (d) of this Section, either the acquiring supplier or the replaced supplier may commence a proceeding before the Commission requesting that *the Commission determine the amount to be paid or* take any other actions necessary to facilitate the requested change of suppliers *in accordance with the provisions of this Section.* If the Commission has not made a final determine of such issue or taken such action within forty-five (45) days of the date when such proceeding was filed, the change of suppliers requested by the consumer shall be put into effect. . . .[3] (emphasis added)

In essence, these sections require the acquiring supplier to purchase the equipment from the replaced supplier. The replaced supplier sets the price based on a formula in the Rule, and the acquiring supplier has no choice but to purchase the equipment at that non-negotiable price. In the event of a dispute the Commission holds a hearing to enforce this statute.[4]

As between electric distribution providers governed by the Retail Electric Supplier Certified Territory Act, Section 158.21 et. seq of Title 17 of the Oklahoma Statutes, there shall not be customer switching from the date of the enactment of this act until full implementation of retail choice, July 1, 2002, except by consent of all affected parties. 17 O.S.Supp.1997 § 190.7

¶ 7 PSO complains that this Rule, in effect, makes the decision that imposes a cost that is arbitrary, and one to which it is beyond the ability of the acquiring supplier to contribute any input. In *PSO I* we wrote that a business owner testified that by switching he could possibly save $3000.00 per year in energy costs, but that the costs imposed by Rule 60 amounted to $36,000.00. These costs were so financially taxing that the business owner could not afford to switch. *PSO I*, 918 P.2d at 737. After *PSO I* and the Commission's amendment the acquiring utility company is permitted to pay the costs rather than forcing the consumer to pay. However, the calculations for figuring costs have not changed; the acquiring company will be required to pay these costs without any consideration of factors such as the reasonable rate of return on investment or whether the purchase is in the best interest of the public.

¶ 8 PSO urges that this imposition of costs, without any leeway for negotiation, amounts to unlawful interference with internal management, as well as an uncompensated taking of property. (Because of our disposition we do not reach the "taking" argument.) PSO asserts that these costs are in many instances higher than the cost of installing new and technically-improved equipment which would better serve that customer.

¶ 9 The Corporation Commission argues in rebuttal that it is charged with the duty of avoiding expensive duplication of equipment costs in order to protect the citizens of Oklahoma. Interestingly, the Commission also asserts that Rule 60's formula for costs is not mandatory, that if an agreement is not reached Rule 60 permits a hearing in which the Corporation Commission can determine the amount to be paid or any other actions that need to be taken to facilitate the consumer's wish to switch. If it is not mandatory the Corporation Commission urges that

internal management decisions are left undisturbed.

■■■ ¶ 10 The law governing this case is the same which governed *PSO I*. Article 9, Section 18, of the Oklahoma Constitution provides the limits of the Commission's powers:

> The Commission shall have the power and authority and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this state, in all matters relating to the performance of their public duties and their charges therefor ... and to that end the Commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just....

The Commission has the power to promulgate rules, and these rules have the force and effect of law. *Henry v. Oklahoma Corporation Comm'n*, 825 P.2d 1262 (Okla.1990); *State ex rel. Villines v. Freeman*, 370 P.2d 307 (Okla.1962). The rules are presumed valid, and it is the burden of the challenging party to show that the rule is unreasonable or invalid. *J. Brotton Corp. v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n*, 822 P.2d 683 (Okla.1991); *Toxic Waste Impact Group v. Leavitt*, 755 P.2d 626 (Okla.1988). The Corporation Commission's power, including the power to promulgate rules, must be exercised only within the confines of its limited jurisdiction as provided by the Oklahoma Constitution. *Public Serv. Co. of Oklahoma v. State*, 645 P.2d 465, 466 (Okla.1982).

■■■ ¶ 11 The Corporation Commission clearly has the power to guard the public's interest with regard to utility rates. *See City of Chickasha v. Arkansas Louisiana*

Thus, after the effective date of the statute, April 25, 1997, customers are prevented from switching from one electric company to another for five years. The purpose of the Electric Restructuring Act is to encourage competition between electric providers. If the Commission indeed takes this purpose to heart Rule 60 could be repealed by the Commission before 2002 arrives. If not repealed, Rule 60 could be enforced if the arguments presented in this appeal were not resolved. Thus, we do not consider the issues presented to be moot.

*Gas Co.,* 625 P.2d 638 (Okla.Ct.App.1981). It also is charged with the duty of avoiding wasteful duplication costs. *Data Transmission Company v. Corp. Comm'n,* 561 P.2d 50 (Okla.1976). However, these powers do not include the right to dictate the internal management decisions of the public utility. For example, in *Oklahoma Gas & Electric Company v. Corporation Comm'n,* 543 P.2d 546 (Okla.1975), the Commission attempted to block a utility company from building a new generation station. The Commission asserted that under the Oklahoma Constitution, it had general regulatory authority. We disagreed, holding that the Commission does not have the constitutional power of general management of the public utility. Quoting *Lone Star Gas Co. v. Corporation Comm'n,* 170 Okla. 292, 39 P.2d 547, 553 (1934), we held that the commission's power "does not include the power to approve or disapprove contracts about to be entered into, nor to the approval or veto of expenditures proposed."

¶ 12  In *Public Serv. Co. v. State,* 645 P.2d 465 (Okla.1982), the Commission attempted to regulate a utility's construction of a plant by refusing to permit the issuance of securities. We held that this was an impermissible interference with the internal business decisions of the public utility. The same principle caused us to invalidate the portions of Rule 60 requiring that changeover costs be passed through to the consumer of electricity in *PSO I.*

¶ 13  With this principle in mind we review Rule 60 and the sections in question. The Constitution gives the Commission the authority to review costs in order to avoid wasteful duplications of equipment. *See City of Chickasha, supra.* Clearly, the Commission has limited power in this arena. If two electric providers are both lawfully permitted to provided electricity to a particular customer, it is easy to imagine a situation in which there could be a wasteful duplication of equipment.

¶ 14  However, Rule 60 does not stop with simply permitting the Commission to review the transaction to avoid wasteful duplication of equipment. It actually sets the formula to be paid by the acquiring supplier, and does so based on figures and numbers *provided by the replaced supplier.* The Rule does not give the acquiring supplier any room for negotiation. Further, the Rule does not provide any accommodation for the situation in which the replaced supplier's equipment is deficient or is obsolete, and could be replaced by the acquiring supplier with more efficient and advanced equipment. In such a situation it may well be that the public interest would be better served by allowing the acquiring supplier to install or build new equipment rather than purchasing outdated equipment, particularly at a price over which it has no control.

¶ 15  Although the replaced supplier is entitled to a reasonable return in investment, *Valliant Telephone Co. v. Corporation Commission,* 656 P.2d 273 (Okla.1982), it is unclear whether the formula in Rule 60 meets this goal without exceeding it. We have held that a public utility is entitled to earn a return on value of property which it employs for the public as well as a return to equity owners sufficient to enable the utility to maintain its financial integrity. *Lone Star Gas Co. v. Corporation Comm'n,* 648 P.2d 36, 39 (Okla.1982). The testimony set out in our opinion in *PSO I* shows that the costs can be as high as twelve times the savings a consumer would expect from changing electric providers. *PSO I,* 918 P.2d at 737. For this reason, costs as calculated under Rule 60's mandated formula might be considered beyond the boundary of "reasonable." At the rulemaking hearing the attorneys for PSO argued that this was in fact the situation. However, there was no testimony to that effect. We do not base our ruling with regard to the constitutionality of Rule 60 on the grounds that it provides more than a reasonable rate of return to the replaced utility, as there is not sufficient evidence in the record to support such a conclusion. We point out this rule of law only to show that there may be some question as to its reasonableness on the rate of return to the replaced utility.

¶ 16  In the final brief filed by the Commission the Commission urges that Rule 60's formula is not mandatory, and that costs to the acquiring supplier can be determined by the Corporation Commission in a hearing. Such an interpretation is inconsistent with

the plain language of Rule 60. Rule 60 states that the only time the Commission becomes involved is when there is a dispute over application of the Rule. In such instance the Commission may hold a hearing to enforce the Rule, but is not given leeway to vary from it. In the event of a dispute, upon application of a supplier the Commission will "determine the amount to be paid ... in accordance with the provisions of this Section." Rule 60(h). The Rule does not give the Commission the authority to selectively apply the mandated formula in some cases and not in others. Rather, if a customer seeks to change electric suppliers the Rule becomes obligatory on the acquiring supplier to the extent of figures furnished by only the replaced supplier.

¶17 Rule 60 steps beyond the constitutional boundaries of the Oklahoma Corporation Commission's authority. Clearly, the Commission has the authority and duty to guard the public's interest in avoiding the wasteful duplication of equipment. However, as *Okla. Gas & Elec., supra, Public Serv. Co. v. State, supra,* and *PSO I, supra* hold, interference with internal management decisions is not within the realm of the Commission's authority. Here, Rule 60 leaps into the arena of setting, without negotiation or input from the acquiring supplier, a price to be paid as changeover costs. These costs, as determined by the formula of Rule 60, are fixed. Neither the replaced nor acquiring supplier can refuse. If either party attempts to dispute the computation the Commission holds a hearing, but only for the purpose of enforcing Rule 60's formula. Such a Rule is an impermissible interference with the internal business decisions of the utility, and is not permitted by our Oklahoma Constitution.

¶18 This cause is reversed, and Sections (b), (c), (d) and (h) of Corporation Commission Rule 60 are declared invalid as purporting to grant to the Commission powers it does not have pursuant to Oklahoma's Constitution.

¶19 SUMMERS, V.C.J., and HODGES, LAVENDER, HARGRAVE and WATT, JJ., concur.

¶20 WILSON, J., concurs in result.

¶21 SIMMS and OPALA, JJ., concur in part, dissent in part.

¶22 KAUGER, C.J., not participating.

