Question Submitted by: The Honorable Jon Echols, State Representative, District 90
2015 OK AG 7
Decided: 09/16/2015
Oklahoma Attorney General Opinions

Cite as: 2015 OK AG 7, __ __

 
¶0 This office has received your request for an Attorney General opinion in which you ask, in effect, the following questions:
1. Once the Corporation Commission of Oklahoma has deemed a previously defined regulated telecommunications service to be "competitive," can the Commission exercise jurisdiction over that competitive service, or over the service provider in connection with the provision of that competitive service?
2. If the Corporation Commission of Oklahoma may exercise jurisdiction over a service deemed competitive or over the service provider in connection with that service, what kinds of matters can the Commission review with respect to those competitive services?[1] 
I.
Introduction
¶1 On February 8, 1996, the United States Congress passed the Telecommunications Act of 1996 to promote competition for local telecommunications services and to reduce regulation of those services nationwide. See Pub. L. No. 104-104, 110 Stat. 56 (1996); 142 Cong. Rec. S686-03 (daily ed. Feb. 1, 1996) (statement of Sen. Dole). Oklahoma followed suit on June 13, 1997, and enacted the complementary Oklahoma Telecommunications Act of 1997 ("Oklahoma Act"), codified as amended at 17 O.S.2011 & Supp.2014, §§ 139.101 - 139.110. 
¶2 The Oklahoma Act provides that the Corporation Commission of Oklahoma ("Commission") "may implement an alternative form of regulation other than traditional rate base, rate of return regulation." Id. § 139.103(E). And in 1999, the Commission promulgated rules governing alternative regulation through competition. 17 Okla. Reg. 306 (Nov. 2, 1999) (codified at OAC 165:55-5-64 - 55-5-76). The Commission's rules provided that "[a] telecommunications service provider may file an application to have the Commission determine that a regulated telecommunications service is subject to effective competition and is therefore competitive for the applicant and/or the applicant class." OAC 165:55-5-10.1(a) (emphasis added). 
¶3 Based on the application and the provider's successful completion of a transition plan, the Commission placed the competitive service under the "Oklahoma Plan" and classified services by one of four "baskets" based on the level of competition for each service. OAC 165:55-5-64, 165:55-5-66. Services placed in "Basket 1" were non-competitive services, while services placed in "Basket 4" were deemed competitive. OAC 165:55-5-66(1), (4). Price changes for Basket 4 services took immediate effect and did not require Commission approval, although they had to comply with public notice requirements. See OAC 165:55-5-66(4), 165:55-5-10(c). To ensure the market remained competitive and to guard against predatory pricing, the Oklahoma Plan set pricing floors and provided that the Commission could "revoke the competitive designation of a service, after notice and hearing, if the Commission determine[d] that the service [was] no longer competitive." OAC 165:55-5-10.1(e), see 165:55-5-66(4)(B). 
¶4 Other than these minimal safeguards, when a service was deemed competitive, it was no longer a "regulated" service. Section 139.102 of the Oklahoma Act provides that:

"Regulated telecommunications service" means the offering of telecommunications for a fee directly to the public where the rates for such service are regulated by the Commission. Regulated telecommunications service does not include the provision of nontelecommunications services, including, but not limited to, the printing, distribution, or sale of advertising in telephone directories, maintenance of inside wire, customer premises equipment, and billing and collection service, nor does it include the provision of wireless telephone service, enhanced service, and other unregulated services, including services not under the jurisdiction of the Commission, and services determined by the Commission to be competitive[.]

17 O.S.2011, § 139.102(25) (emphasis added). Your question relates to the Commission's jurisdiction as it pertains to telecommunications services that, at one time, were regulated by the Commission, but are now deemed competitive and are, therefore, no longer regulated by the Commission. To answer your question, we must examine what regulation means with respect to the Commission's jurisdiction. 
II.
The Oklahoma Plan Significantly Narrowed the Commission's Jurisdiction Over Services Deemed Competitive.
A. The Commission's general authority over companies is limited and must be exercised within the confines of the Oklahoma Constitution and legislative enactments.
¶5 Article IX, Section 18 of the Oklahoma Constitution governs the general powers and duties of the Commission and provides that it has 

the power and authority and [is] charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies; and to that end the Commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations, and requirements, the Commission may, from time to time, alter or amend.

Okla. Const. art. IX, § 18.[2] But while Article IX, Section 18 describes the authority of the Commission to set rates, charges, and classifications as "paramount," it also provides that "its authority to prescribe any other rules, regulations or requirements for corporations . . . shall be subject to the superior authority of the Legislature." Id. 
¶6 Indeed, the Supreme Court of Oklahoma has found that the "Commission's power . . . must be exercised only within the confines of its limited jurisdiction as provided by the Oklahoma Constitution" and statute. Pub. Serv. Co. v. State ex rel. Corp. Comm'n, 1997 OK 145, ¶ 23, 948 P.2d 713, 717; Pub. Serv. Co. v. State ex rel. Corp. Comm'n, 1996 OK 43, ¶ 21, 918 P.2d 733, 738. That is, "[t]he Commission's power to regulate is not unfettered." Id.
¶7 Finally, before the Commission can direct any rate, charge, classification, order, rule, regulation, or requirement against a specific company, the Commission must first afford that company at least ten days' notice of the contemplated action and a reasonable opportunity to introduce evidence, and to be heard on the issue. Okla. Const. art. IX, § 18. 
B. The Oklahoma Plan further narrowed the Commission's jurisdiction over services deemed competitive, removing Commission approval over pricing generally but authorizing the Commission to determine whether the market remained competitive.
¶8 Within the context of the Commission's general powers and duties, the Supreme Court has limited the Commission's jurisdiction over services deemed competitive under the Oklahoma Plan. In Cox Oklahoma Telecom, LLC v. State ex rel. Oklahoma Corporation Commission, 2007 OK 55, 164 P.3d 150, the Supreme Court recognized that the Oklahoma Plan provided "some measure of freedom from regulatory oversight by the Commission depending on the level of competition present in the . . . marketplace," id. ¶ 2, 164 P.3d at 153, and noted that the Commission maintained "minimal regulatory supervision." Id. ¶ 15, 164 P.3d at 158 (emphasis added). The court specified that providers received "pricing freedom" but found, in agreement with the Commission, that granting an application under the Oklahoma Plan did not "deregulate the company." Id. ¶ 57, 164 P.3d at 170-71 (emphasis added). Rather, the Commission retained a very narrow strand of jurisdiction: the ability to remove a service's competitive designation if the Commission found that the marketplace was no longer competitive. Id. 
¶9 In 2012, however, the Commission revoked the Oklahoma Plan and the rules governing competitive services. 29 Okla. Reg. 1549 (July 2, 2012). Therefore, these rules no longer have the force and effect of law.[3] State ex rel. West v. McCafferty, 1909 OK 291, ¶ 12, 105 P. 992, 994. Nevertheless, a review of the legislative enactments still governing services deemed competitive shows that the Commission's jurisdiction over such services is still very narrow, as the Supreme Court found in Cox.
III.
Following Revocation of the Oklahoma Plan, the Commission's Jurisdiction Over Services Still Bearing Their Competitive Designation Must be Determined on the Basis of the Oklahoma Act.
¶10 Despite the Commission's revocation of the Oklahoma Plan, this Office understands that certain services still bear their competitive designations. Indeed, to date, it appears that the Commission has not notified any service provider of the Commission's intention to remove the competitive designation from any service--an action it could not take without notice and an opportunity to be heard. See Okla. Const. art. IX, § 18. Therefore, at present, providers still offer services deemed competitive that have been untethered from the rules pursuant to which they gained their competitive designations. As such, we return to the Oklahoma Act to determine what that legislation states regarding the Commission's jurisdiction over services deemed competitive.
¶11 To do so, we construe the relevant enactments and their various provisions together "in light of their underlying general purpose and objective." State ex rel. Okla. State Dep't of Health v. Robertson, 2006 OK 99, ¶ 7, 152 P.3d 875, 878. We also consider these provisions in light of Article IX, Section 18 of the Oklahoma Constitution, included at Part II(A) above, which describes the Commission's duties generally. When interpreting the Oklahoma Constitution, the intent of the framers and the people adopting it must be given effect. "Absent an ambiguity, the intent is settled by the language of the provision itself." S. Tulsa Citizens Coal., L.L.C. v. Ark. River Bridge Auth., 2008 OK 4, ¶ 11, 176 P.3d 1217, 1220; see also Okla. Elec. Co-op., Inc. v. Okla. Gas & Elec. Co., 1999 OK 35, ¶ 7, 982 P.2d 512, 514 (noting the controlling importance of intent and plain text when construing the Oklahoma Constitution).
¶12 Returning to Section 139.102 of the Oklahoma Act, subsection 14 provides that "'local exchange telecommunications service' means a regulated switched or dedicated telecommunications service," 17 O.S.Supp.2014, § 139.102(14) (emphasis added), and "local exchange telecommunications service provider" is simply a provider of such service. Id. § 139.102(15). Regulated services do not include services determined to be competitive. Id. § 139.102(25). Therefore, where the Oklahoma Act refers to "local exchange telecommunications services" (which are regulated services), providers of such services, or "regulated services" themselves, those provisions would not apply to services deemed competitive. 
¶13 With these definitions in mind, a review of provisions within the Oklahoma Act addressing the Commission's jurisdiction demonstrates that the vast majority of these provisions plainly do not apply to competitive services. For example, Section 139.103 provides, in pertinent part, the following:

A. Except as provided as follows, no company shall increase or decrease any regulated telecommunications service rate without approval of the Corporation Commission, consistent with Commission rules. . . . 
B. Unless approved by the Legislature, no local exchange telecommunications service provider may charge a basic local exchange service rate that exceeds a basic local exchange service rate previously approved by the Commission and in effect on March 20, 1997 . . . .
C. Nothing in this act shall be construed as modifying, affecting, or nullifying the responsibilities of the Commission or any telecommunications carrier as required pursuant to the National Labor Relations Act, the Communications Act of 1934 as amended by the Telecommunications Act of 1996, or the provisions relating to refund liability for overcharges pursuant to Section 121 et seq. of this title.
D. . . . With respect to local exchange telecommunications service providers serving fifteen percent (15%) or more of the access lines in the state[.]
. . . .
E. Upon application of a provider of regulated telecommunications services, the Commission may implement an alternative form of regulation . . . .
F. Nothing in this section shall be construed as restricting any right of a consumer to complain to the Commission regarding quality of service or the authority of the Commission to enforce quality of service standards through the Commission's contempt powers or authority to revoke or rescind a certificate of convenience and necessity if the provider fails to provide adequate service. A certificate shall not be revoked or rescinded without notice, hearing, and a reasonable opportunity to correct any inadequacy.
G. The rules of the Corporation Commission governing quality of service shall apply equally to all local exchange telecommunications service providers.
H. In a manner consistent with the provisions of this act and rules promulgated by the Commission, the Commission shall retain jurisdiction over access services and rates.

17 O.S.2011, § 139.103 (emphasis added). 
¶14 Based on the definitions provided above, subsections (A), (B), (D), (E), and (G) do not apply to services deemed competitive. That is, because these provisions apply to local exchange telecommunications services, providers of such services, or regulated services themselves, these provisions plainly do not apply to competitive services. As such, the Commission's authority as provided in these particular subsections do not apply to competitive services or over service providers in connection with the provision of these competitive services. 
¶15 Pursuant to subsections (F) and (H), however, the Commission retains limited oversight to ensure that the market remains competitive. Pursuant to subsection (F), the Commission retains the authority to hear consumer complaints regarding quality of service and to enforce quality of service standards.[4] Id. § 139.103(F). In tandem with subsection (F), Section 139.104 of the Oklahoma Act provides that "the Commission, through its Consumer Services Division, shall mediate grievances between consumers and telecommunications carriers and ensure compliance with quality of service standards adopted for local exchange telecommunications service providers and other telecommunications carriers which operate in this state." 17 O.S.2011, § 139.104(B) (emphasis added). "Telecommunications carrier" is defined in the Oklahoma Act as "a person that provides telecommunications service in this state[,]" without reference to whether such service is regulated or not. § 139.102(29). Reading subsection (F) in conjunction with Section 139.104, it is clear that even though services deemed competitive are not regulated by the Commission, the Commission retains this limited oversight.
¶16 Further, subsection (H) provides that the Commission retains jurisdiction over access services and rates generally. 17 O.S.2011, § 139.103(H). "Access lines" are facilities "provided and maintained by a telecommunications service provider," without reference to whether such services would be regulated or not. Id. § 139.102(1). Reading subsection (H) in light of the foregoing, general jurisdiction over access services and rates must comport with the goal of deregulation--that goal being a competitive marketplace. Thus, as Cox determined, this sharply limited oversight solely reflects the Commission's ability to ensure that the marketplace remains competitive, but no more. See Cox, 2007 OK 55 at ¶¶ 2, 15, 164 P.3d at 153, 158. 
¶17 In sum, subsections (A), (B), (D), (E), and (G) of Section 139.103 largely relate to the Commission's role in regulating and setting rates and do not apply to services deemed competitive or providers in connection with the provision of those services. But subsection (F) and Section 139.104 authorize the Commission to ensure that the consumer receives a quality service regardless whether that service is regulated or not. Further, subsection (H) ensures that the marketplace remains competitive and, therefore, fair.[5]
¶18 Because we conclude that the Commission retains limited jurisdiction over competitive services, we next consider the kinds of things the Commission may review with respect to competitive services.
IV.
Having Determined That the Commission Retains Jurisdiction Over Competitive Services, the Commission may Consider Certain Categories of Information in Reviewing Both Quality of Service Standards and a Competitive Marketplace.
A. Quality of service standards fall into three categories: ensuring continuous service of an adequate quality, sufficient equipment in a good state of repair, and adequate provision for emergencies.
¶19 Having determined that the Commission retains jurisdiction over services deemed competitive, the Commission's current administrative rules apply to those services. See OAC 165:55-1-3 ("This Chapter shall apply to every telecommunications service provider . . . in Oklahoma subject to the jurisdiction of the Commission.") (emphasis added).
[6] Nevertheless, the Commission's authority as embodied in those rules must fit within the confines of legislative enactments. See Pub. Serv. Co., 1996 OK 43, ¶ 21, 918 P.2d 733, 738. That means the Commission's rules must reflect those aspects of jurisdiction that the Commission has retained and not exceed them.
¶20 The Commission's rules define what constitutes quality of service standards, see OAC 165:55-13-20 - 26, and fit within the legislative enactments that speak to the Commission's jurisdiction as discussed above. Pursuant to the Commission's rules, quality of service includes standards falling within three general categories: ensuring continuous service of an adequate quality, sufficient equipment in a good state of repair, and adequate provision for emergencies. 
¶21 As to the first category--continuous service of an adequate quality, a telecommunications service provider must ensure "adequate and efficient telephone service." OAC 165:55-13-20(a). Adequate and efficient telephone service requires telephone systems to be "safe, efficient, and continuous." OAC 165:55-13-20(b). Further, "[t]he dominant criteria for these standards is voice grade service quality." OAC 165:55-13-20(d). Within this context, quality of service would include considerations such as dial tone, call dropping, and clear communications.
¶22 Second, a telecommunications service provider must keep "its lines, equipment, and facilities in a good state of repair." OAC 165:55-13-20(b). Indeed, the Commission has adopted national minimum standards for the installation, construction, and maintenance of communication lines. OAC 165:55-13-20(c). And this equipment must be sufficient "to handle the average busy hour, busy season traffic." OAC 165:55-13-24.
¶23 Finally, telecommunications service providers must "make adequate provision for emergencies in order to prevent interruption of continuous telecommunications service throughout the area it serves." OAC 165:55-13-22(a). And central offices must have an emergency power source. OAC 165:55-13-22(b). Quality of service, therefore, suggests that telecommunications service providers must be prepared for emergency situations.
¶24 In sum, quality of service includes the considerations listed above. Because the Commission retains jurisdiction to consider quality of regulated and non-regulated services alike, the Commission may review things like dial tone and emergency preparedness. See OAC 165:55-13-25 (providing the timelines for a telecommunications service provider to respond to customer complaint inquiries).
B. Marketplace review permits the Commission to consider certain factors with respect to telecommunications service providers as a whole.
¶25 Next, and to a lesser extent, the Commission retains jurisdiction to ensure that the marketplace remains competitive. Indeed, the Commission's rules provide that they are intended "to allow Oklahoma consumers to receive timely benefits from lawful market-driven price and service competition." OAC 165:55-1-1. 
¶26 Ensuring the marketplace remains competitive permits the Commission to consider for a class of providers any matter reasonably related to the market's competitiveness, such as the rates charged, the timing of rate increases, and service territory. This conclusion is in parity with the Supreme Court's Cox opinion in which the court stated that market-driven price regulation raises no concerns in light of the Commission's continuing jurisdiction "should it suspect anti-competitive behavior or predatory pricing." Id., 2007 OK 55, ¶ 57, 164 P.3d at 171.

¶27 It is, therefore, the official Opinion of the Attorney General that:
1. Once the Corporation Commission of Oklahoma deems a service competitive, the Commission no longer retains the authority to regulate that competitive service or over the service provider in connection with the provision of that competitive service, i.e. the Commission cannot regulate service rates. But the Commission retains the authority to ensure the continued quality of regulated and non-regulated services alike and to ensure that the marketplace remains competitive. 
2. To ensure consumers receive a quality service, the Commission may consider the following categories of quality considerations including continuous service of an adequate quality, sufficient equipment in a good state of repair, and adequate provision for emergencies. 
3. And to ensure the market remains competitive, the Commission may consider various factors such as the rates charged, the timing of rate increases, and the service territory for a class of providers.

E. SCOTT PRUITT
Attorney General of Oklahoma
Cara N. Rodriguez
General Counsel to the Attorney General
FOOTNOTES
[1] This opinion does not address the jurisdiction over a telecommunications company either generally or with respect to any services other than telecommunications services deemed competitive that a telecommunications company may provide. 
[2] Because telephone companies are transmission companies, public service corporations, and telecommunications carriers, the Commission regulates telephone companies. See A. G. Opin. 06-15, at 112. 
[3] See Estes v. ConocoPhillips Co., 2008 OK 21, ¶ 10, 184 P.3d 518, 523 (standing for the proposition that agency rules have the force and effect of law). 
[4] The Commission retains this authority through its contempt power and through its ability to revoke or rescind a Certificate of Convenience and Necessity. See id. § 139.103(F). No telecommunications service provider can provide services within the State without first obtaining a certificate of convenience and necessity, see 17 O.S.2011, § 131(A), and Article IX, Section 19 of the Oklahoma Constitution describes the Commission's contempt powers. See Okla. Const. art. IX, § 19. 
[5] This reading accords with the plain meaning of the Constitution and the Oklahoma Act with an eye to the purposes of deregulation generally. That is, the Telecommunications Act of 1996 provides that a State may continue to "protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers." 47 U.S.C. § 253. 
[6] Reference in the Commission's rules to a "telecommunications service provider" applies to "providers of local exchange service, whether an incumbent LEC or a competitive LEC." OAC 165:55-1-4. 

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1909 OK 291, 105 P. 992, 25 Okla. 2, 
STATE ex rel. WEST Atty. Gen. et al. v. MCCAFFERTY County Treasurer
Discussed

 
1996 OK 43, 918 P.2d 733, 67 OBJ 1021, 
Public Service Co. of Oklahoma v. Oklahoma Corp. Comm.
Discussed at Length

 
2006 OK 99, 152 P.3d 875, 
STATE ex rel. OKLA. STATE DEPT. OF HEALTH v. ROBERTSON
Discussed

 
2007 OK 55, 164 P.3d 150, 
APPLICATION OF SOUTHWESTERN BELL TELEPHONE, L.P.
Discussed at Length

 
2008 OK 4, 176 P.3d 1217, 
SOUTH TULSA CITIZENS COALITION L.L.C. v. ARKANSAS RIVER BRIDGE AUTHORITY
Discussed

 
2008 OK 21, 184 P.3d 518, 
ESTES v. CONOCOPHILLIPS CO.
Discussed

 
1997 OK 145, 948 P.2d 713, 68 OBJ 3885, 
PUBLIC SERVICE CO. v. STATE ex rel. CORPORATION COMM.
Discussed

 
1999 OK 35, 982 P.2d 512, 70 OBJ 1366, 
Oklahoma Electric Cooperative, Inc. v. Oklahoma Gas and Electric Co.
Discussed

Title 17. Corporation Commission

 
Cite
Name
Level

 
17 O.S. 139.103, 
Required Commission Approval - Scope and Application of Act
Discussed

 
17 O.S. 131, 
Certificate of Convenience and Necessity
Cited

 
17 O.S. 139.101, 
Short Title
Cited

 
17 O.S. 139.102, 
Definitions
Discussed

 
17 O.S. 139.104, 
Attorney General Compensation
Cited