A. A. CAMERON, Plaintiff in Error,

v.

The CORPORATION COMMISSION of the State of Oklahoma, and Champlin Oil and Refining Company, Defendants in Error.

No. 40879.

Supreme Court of Oklahoma.

April 12, 1966.

Rehearing Denied May 17, 1966.

Hal D. Leaming, James L. Burton, of Smith, Leaming & Swan, Oklahoma City, for plaintiff in error.

Ferrill H. Rogers, Oklahoma City, for defendant in error Corporation Commission of Oklahoma.

T. Murray Robinson, William N. Christian, of Robinson, Robertson & Barnes, Oklahoma City, for defendant in error Champlin Oil & Refining Co.

DAVISON, Justice.

A. A. Cameron (herein referred to as Applicant) is the owner and operator of the oil and gas leasehold estate covering the SE¼ of the NW¼ of Sec. 4, Township 2 North, Range 2 West, Stephens County, Oklahoma. Applicant appeals from an order of the Corporation Commission denying his application (filed June 19, 1963) to delete this land from the purview of certain orders of the Commission, and particularly from Order No. 48309 made March 20, 1962, which extended previous orders to include Applicant's leasehold and the area to the east thereof in the east half of said Section 4.

The first of these Orders (No. 32611) was made May 29, 1956, and covered areas east of Section 4, in Sections 2 and 3. It declared the Rowe Zone, found between the approximate depths of 7000 feet and 7600 feet and composed of a series of thin sands that were productive, constituted a separate common source of supply of oil and gas, and established 20 acre drilling and spacing units. As drilling of wells progressed the Commission extended its initial order by later orders to cover lands further west, and by Order No. 48309, supra, included Applicant's leasehold as the most western area thereof. This order was not appealed and became final.

Order No. 48309 was made upon application of Champlin Oil & Refining Co. The order designated the south 20 acres (S½ SE NW¼) of Applicant's leasehold as a drilling and spacing unit for production from the Rowe Zone. Champlin owns oil and gas leases on lands east of Applicant's lease, including the east and west 20 acre unit (S½ SW¼ NE¼) immediately east of Applicant's unit above described. The Rowe Zone (approximately 7000 to 7600 feet) consists of three productive sands or intervals. In the testimony they were referred to in the order of their descending levels within the Zone as the, First or Upper Rowe, Main or Middle Rowe, and Hervey.

The basis for the application to delete Applicant's 40 acre leasehold from the Commission's Order was that the Rowe Zone underlying such land was a separate common source of supply because a vertical fault or barrier separated it from the Rowe Zone beneath the lands to the east thereof. The application was referred to a trial examiner for hearing and report to the Commission. The trial examiner's re-

port set forth a resume of the evidence presented for and against the application, and recommended the application be granted.

Champlin filed exceptions to the report and the matter was argued to the Commission. The Commission refused to adopt the Examiner's recommendation and denied the application, stating it had heard argument, examined the Examiner's report and transcript of the proceedings before him, and that the exceptions should be sustained. The Commission found:

"That the evidence of applicant tending to establish that the Rowe sand under the SE NW of Section 4–2N–8W, Stephens County, Oklahoma, is a separate common source of supply from the Rowe sand underlying the balance of the spaced Rowe sand area is inconclusive and insufficient to overturn the presumption which arose out of the order establishing the Rowe sand as a single common source of supply throughout the spaced area, and to hold such area underlain by a separate common source of supply in the Rowe sand would give the applicant a producing advantage over the other owners of Rowe sand production throughout the balance of the spaced area, * * * "

In its order the Commission stated that the zone corresponding to the Rowe Zone found in wells to the east of said Section 4 "between the approximate depths of 7,000 feet and 7,600 feet be and the same is hereby again determined to be a single common source of supply of oil and gas underlying the area covered by" the previous orders, including the land leased to Applicant.

Applicant urges that the order of the Commission violates his constitutional rights (14th Amendment of the Constitution of the United States) in that it deprives him of valuable property rights and equal protection of the law, and further that the order is not sustained by substantial and competent evidence, and is contrary to law. Applicant relies on Article 9, Section 20, of the Constitution of Oklahoma, governing

this court's review of orders of the Commission that are appealed to this court. Appellant relies on these provisions (as stated in his brief) "to invoke this Court's examination of the Record to determine if the Commission based its finding that the Rowe Zone is a single source of supply on competent and substantial evidence."

Applicant does not point out in what specific respect his constitutional rights have been violated. From the above quoted excerpt from his brief it is apparent that he is asking this court to review the record to determine whether or not the order is sustained by competent and substantial evidence. The Commission was proceeding under authority of 52 O.S.1961, Sec. 81 et seq., providing for conservation of the natural resources of oil and gas. Its authority to so proceed has been repeatedly upheld as a proper exercise of the police power of the State. Patterson v. Stanolind Oil & Gas Co., 182 Okl. 155, 77 P.2d 83; 305 U.S. 376, 59 S.Ct. 259, 83 L.Ed. 231, and Layton v. Pan American Petroleum Corporation, Okl., 383 P.2d 624.

As a part of his argument the Applicant appears to assume that the Commission's order was based almost entirely upon the "presumption" that arose from its prior orders that the Rowe Zone was a common source of supply. This is not correct. The order recites that the Commission heard arguments and examined the Examiner's report and transcript of the proceedings before the Examiner.

This is an application to modify a prior order of the Commission by deleting or separating a portion of a productive zone from the effect of such prior order.

In Hester v. Sinclair Oil and Gas Company, Okl., 351 P.2d 751, a prior order provided for 40 acre spacing and an applicant sought to modify the order to establish 80 acre spacing. The Commission granted the application in part. In reviewing such action on the ground of lack of evidence to support the same, this

court referred to the prior existing order and stated (p. 755):

"We must assume, until that order is modified by another one—*supported by substantial evidence*—that it was so supported. The previous order remains in force and effect until it is properly amended, modified or vacated; and, the burden was upon the party applying for a new and different pattern of well spacing, to produce evidence to support such a change."

■ And in Wood Oil Co. v. Corporation Commission, 205 Okl. 534, 239 P.2d 1021, we said:

"The Corporation Commission is without authority to entertain or grant an application to vacate, amend or modify a spacing and well drilling unit established by a former order of the Commission, which has become final, in the absence of a showing of a substantial change of condition in the area, since the former order was made or other change of factual situations specified in the statutes."

See also Application of Continental Oil Company, Okl., 376 P.2d 330.

In addition to the general information heretofore related, it was shown that Applicant had drilled two wells on his south 20 acre spacing. These were the Rankin 1A, located in the east 10 acres of such spacing, and the Rankin 3, located in the west 10 acres of such spacing. The Rankin 1A (east well) was completed in 1952, and was drilled through the First Rowe and Middle Rowe sands, but did not penetrate into the Hervey (bottom) sand. It was producing from the Middle Rowe. The Rankin 3 (west well) was completed in 1963 and was drilled through the Rowe Zone into a deeper formation, where it was completed in the Wade interval as a gas well. It was found to be productive of oil and gas in the First Rowe sand and Hervey, but not in the Middle Rowe. Applicant then filed the present application.

Immediately to the east of Applicant's 20 acre spacing and offsetting the Rankin 1A is Champlin's Hervey 2A well. It was drilled into the Hervey sand and completed in 1952 in the Middle Rowe, which went to water, and was recompleted in 1960 in the First Rowe.

All of the evidence relative to the Rowe Zone under the leasehold of Applicant constituting a separate common source of supply consists of testimony of petroleum engineers, geologists and consultants. It was of a scientific nature and based on training and experience, and interpretation of scientific data produced at the hearing.

Champlin's witnesses testified that the Rowe Zone was continuous and extended from under Applicant's leasehold and on to the east and southeast; that this was reflected by the existence of a good correlation in a series of wells, beginning with Applicant's wells and running to the east and southeast; that these conclusions were supported by the electrical logs (in evidence) of 10 wells, including Applicant's wells, spaced easterly along this line to the southeast corner of Section 3; that their scientific data reflected no fault in the Rowe Zone between Applicant's wells and the area to the east; and that any difference in pressures in Applicant's Rankin 3 well and those existing in the same respective sands in Champlin's Hervey 2A and other wells in that area were attributable to the extensive production that had occurred in the latter wells, and to the tightness of the formation in the Hervey interval.

Applicant's witnesses testified that in his Rankin 3 there was an impervious barrier between the First Rowe and Middle Rowe, and between the Middle Rowe and Hervey. They based their opinion that there was a fault or barrier in the Rowe Zone between Applicant's leasehold and the area to the east on several grounds: 1. The difference in well pressures, on the theory that a continuous interval would tend to cause the pressures to equalize. 2. That there were other faults in the general area, including a known fault along the south edge of the

field. 3. And by showing a schematic cross section drawing prepared from collected data, reflecting the claimed north and south fault. This drawing did not include Champlin's Hervey 2A, but did include its offset well to the south which was the highest well in the field. The witness on this drawing stated a thickening of a shale interval and the dip from the offset well was evidence of the claimed fault. This witness admitted the electrical logs of the series of wells introduced by Champlin, which included Champlin's Hervey 2A (but not the south offset thereto), did not evidence any fault or lack of continuity between the Hervey 2A and Applicant's Rankin 1A, and that from a structural position "the wells are essentially flat."

■ In Application of Continental Oil Company, supra, (376 P.2d 330, 334) it is stated:

"The Commission has a wide discretion in the performance of its statutory duties and this court may not substitute its judgment on disputed questions of fact for that of the Commission, unless the findings of the Commission are not supported by the law and substantial evidence."

See also Vogel v. Corporation Commission, Okl., 399 P.2d 474.

■ And in Chenoweth v. Pan American Petroleum Corporation, Okl., 382 P.2d 743, we said:

"The determination whether there is 'substantial evidence' to support an order made by Corporation Commission does not require that the evidence be weighed, but only that the evidence tending to support the order be considered to determine whether it implies a quality of proof which induces the conviction that the order was proper or furnishes a substantial basis of facts from which the issue tendered could be reasonably resolved."

■ Both sides produced technical expert evidence to inform the Commission regarding the existence or non-existence of the alleged fault that Applicant relied upon to sustain his application for deletion of his tract from the effect of the order of the Commission. The Commission chose to accept the evidence presented to show that the fault did not exist. From our review of the record we find there is substantial evidence to support the conclusion of the Commission.

In his reply brief the Applicant contends that the Commission's order is insufficient to comply with Article 9, Section 22, of the Oklahoma Constitution, requiring the Commission to furnish "a written statement of the reasons upon which the action appealed from was based" and "certify to the Supreme Court all the facts upon which the action appealed from was based."

■ We point out that the Corporation Commission is not subject to the Administrative Procedures Act of 1963, 75 O.S. Supp.1963, Sec. 301, et seq., except Sec. 304(a) thereof, relative to filing of its rules.

The Examiner's report contained a resume of the evidence presented for and against the application to modify the prior order. We think this resume is a fair statement of such evidence. This report was examined by the Commission and it is obvious that the many technical facts and things therein set forth and appearing in the evidence that either failed to establish, or negatived the existence, of the fault or barrier were the "facts" upon which the order was based. The "reasons" for the order was that (in such situation) to hold the area was underlain by a separate common source of supply would give Applicant a producing advantage over the owners of production throughout the balance of the spaced area. It is our function to review and not weigh the evidence, and then determine if there is substantial evidence to support the Commission's order.

In Sinclair Oil & Gas Company v. Corporation Commission, Okl., 378 P.2d 847, 856, we said that the proceedings before the

Commission are rather informal, and their validity is not tested by all the technical rules that obtain in court trials.

■ Under the circumstances we think that it would have added nothing to the validity of the order, if the Commission had undertaken to detail therein the many considerations that went into making up the findings therein.

In connection with Applicant's last contention, it is urged by Applicant that the contrary report of the Examiner has a bearing on the question of the substantial character of the evidence supporting the order of the Commission. Citing A. E. Staley Mfg. Co. v. N. L. R. B., 117 F.2d 868 (7th Cir. 1940) and Wilson & Co. v. N. L. R. B., 123 F.2d 411 (8th Cir. 1941). This contention injects into our consideration of the evidence the aspect of weighing the evidence. In the later case of Daniel Construction Company v. N. L. R. B., 341 F.2d 805, 813, (4th Cir. 1965) the court held that since the Board's finding was supported by substantial evidence, the contrary conclusion of the trial examiner was entitled to no special weight.

■ Title 17 O.S.1961, Sec. 162, authorizes the Commission, inter alia, to assign persons in its regular employ as examiners, conduct hearings and receive evidence and report the same to the Commission. The statute, supra, does not attach any particular weight or significance to the Examiner's report. Regardless of whatever weight the Commission may attach to the report, the Commission is the final arbiter of the issues. It is our opinion that, under these circumstances, the report of the Examiner is entitled to no special weight in this court in determining whether the order of the Commission is supported by substantial evidence.

Applicant further contends that he is entitled to relief upon showing that entirely separate sources of supply exist in his Rankin No. 3 well because of impermeable horizontal barriers between horizons of production. Applicant has reference to his showing that in his Rankin No. 3 well there was an impermeable horizontal barrier between the productive First Rowe and the productive Hervey in that well.

■ We do not understand that the allowance of production from either or both of these two sands from his Rankin No. 3 well, because of impervious *horizontal* separation, was an issue in the proceeding. His application alleged that the prior orders spaced his tract for production from the "Rowe Zone, common source of supply" and that "the said Rowe Zone as spaced in said Orders does not underly (sic) the said 40-acre tract of Applicant, and said tract, therefore, should be deleted from previous drilling and spacing orders of the Commission as apply to the said Rowe Zone" and prayed for an order deleting his tract from the effect of such orders. Applicant sought to show that the Rowe Zone beneath his tract was a common source of supply, separate from the Rowe Zone beneath the area to the east, and his witnesses expressed the opinion this was true because of a fault or barrier between the two parts. Applicant's contention, when viewed in the light of our approval of the order appealed from, presents an issue of proration. This is an issue that was not presented or determined by the Commission.

The order of the Corporation Commission is approved.

Affirmed.

HALLEY, C. J., JACKSON, V. C. J., and WILLIAMS, BLACKBIRD, IRWIN, BERRY and LAVENDER, JJ., concur.