STATE of Oklahoma ex rel. Jan Eric CARTWRIGHT, Attorney General, Appellant,

v.

SOUTHWESTERN BELL TELEPHONE CO. (Oklahoma); United Telephone Assn., Inc.; Kan Okla. Telephone Assn.; Craw-Kan Telephone Coop. Assn., Inc.; Continental Telephone Company of Kansas; Totah Telephone Company; Elkhart Telephone Company; United Telephone Company of Arkansas; Seneca Telephone Company; Continental Telephone Company of Missouri;

and

The Corporation Commission of the State of Oklahoma, Appellees.

No. 56728.

Supreme Court of Oklahoma.

April 19, 1983.

Jan Eric Cartwright, Atty. Gen. of Okl., Michael L. Bardrick, Asst. Atty. Gen., Chief, Consumer/Utility Div., Rhett Darby, Asst. Atty. Gen., Russell Cook, Legal Intern, Oklahoma City, for appellant.

Robert D. Stewart, Jr., Gen. Counsel, Lindil C. Fowler, Jr., Deputy Gen. Counsel, Eddie M. Pope, Appellate Counsel, Oklahoma Corp. Com'n, Oklahoma City, for appellee, Oklahoma Corp. Com'n.

William J. Free, Mary R. Whitten, Oklahoma City, for appellee, Southwestern Bell Telephone Co.

LAVENDER, Justice:

The State of Oklahoma, ex rel. the Attorney General, as Appellant filed a Petition in Error in the Supreme Court of the State of Oklahoma to review on appeal the final order of the Corporation Commission of the State of Oklahoma. The appeal was assigned to the Court of Appeals, Division No. 1, for determination. That court handed down its decision. To that decision Appellees Southwestern Bell Telephone Company and the Oklahoma Corporation Commission filed their motions for rehearing. Both motions were denied. Said Appellees filed applications to the Supreme Court to grant certiorari and to review the decision of the Court of Appeals. The petitions for certiorari were granted. Thereafter, Appellee Oklahoma Corporation Commission filed a motion for leave to file an additional brief addressing the issue of whether the Court of Appeals may constitutionally decide cases appealed from the Oklahoma Corporation Commission to the Supreme Court, and assigned by the Supreme Court to the Court of Appeals for determination. The motion was granted. Briefs on the issue of the assignability of appeals from the Corporation Commission to the Court of Appeals have now been filed.

Ten telephone companies maintain central or telephone exchange offices in bor-

dering states, a small portion of whose customer users are located across the border and within the State of Oklahoma.

On March 26, 1981, the Corporation Commission of the State of Oklahoma adopted Order No. 186940, which in substance, determined the following:

When any exchange is served by a central office or offices located in an adjacent state and the lesser of 10% or 500 of the customers served are located in Oklahoma (except when the exchange has fewer than 500 customers the 10% limitation shall not apply), the basic local exchange services within Oklahoma shall be furnished at the rates and charges prescribed by the adjacent state within which such central office or offices are located;

PROVIDED:

a. The company shall file all pleadings with the Oklahoma Corporation Commission as are filed with the adjacent state within 10 days subsequent to the filing, or within 10 days from the effective date of the order;

b. The company shall mail notice to its Oklahoma users that such user may contact the Oklahoma Corporation Commission regarding any objections to any proposed rate increase, together with an impact statement as directed by the Oklahoma Corporation Commission;

c. The rates and charges prescribed by an Order of the Regulatory Agency of such adjacent state, after a hearing on the merits has been held in said adjacent state, shall be filed with the Oklahoma Corporation Commission; and

PROVIDED FURTHER that unless the Oklahoma Corporation Commission, within 30 days after filing of the rates and charges approved by the adjacent state, determines that additional hearings are required to either accept or reject such rates and charges, then said rates and charges shall become lawfully effective for the Oklahoma customers upon the same date when such rates and charges are effective in the adjacent state.

Two issues are presented for determination on appeal:

1. May appeals to the Supreme Court of the State of Oklahoma from orders of the Oklahoma Corporation Commission affecting rates, charges, classifications of traffic, and rules and regulations of transportation and transmission companies doing business in the State of Oklahoma be assigned by the Supreme Court to the Court of Appeals of the State of Oklahoma for determination?

2. Does the order as promulgated by the Oklahoma Corporation Commission constitute an unlawful abrogation and delegation of the Commission's constitutional duties?

We answer the first issue in the affirmative, and the second in the negative.

I.

Art. 9, § 20 of the Oklahoma Constitution in pertinent part provides:

"An appeal from an order of the Corporation Commission affecting the rates, charges, services, practices, rules, or regulations of public utilities, or public service corporations, shall be to the Supreme Court only, ...

\*      \*      \*      \*      \*      \*

".... Upon review, the Supreme Court shall enter judgment, either affirming or reversing the Order of the Commission appealed from.

"No court of this State, except the Supreme Court, shall have jurisdiction to review, affirm, reverse, or remand any action of the Corporation Commission with respect to the rates, charges, services, practices, rules, or regulations of public utilities, or of public service corporations or to suspend or delay the execution or operation thereof, or to enjoin, reverse, or interfere with the Corporation Commission in the performance of its official duties; ...."

By State Question No. 448, Legislative Referendum No. 164, adopted at an election held on July 11, 1967, Article 7 of the Oklahoma Constitution was rewritten. Sec. 5 of the newly constituted Art. 7 provides, in part:

". . . . In the event of the creation of intermediate appellate courts, all appeals shall be made to the Supreme Court, which may, by rule, determine the method of assignment to, and recall from, the intermediate appellate courts until otherwise provided by statute. When the intermediate appellate courts acquire jurisdiction in any cause and make final disposition of the same, such disposition shall be final and there shall be no further right of appeal except for issuance of a writ of certiorari ordered by a majority of the Supreme Court which may affirm, modify or make such other changes in said decision as it deems proper."

By 20 O.S.Supp.1968, § 30.1, the Court of Appeals of the State of Oklahoma was created. That section, in pertinent part, further provides:

". . . . The Court of Appeals shall have jurisdiction of all cases that are assigned to it by the Supreme Court, and the decisions of the Court of Appeals shall be final and shall not be appealable to the Supreme Court or reviewed by another division of the Court of Appeals or the whole Court of Appeals. Provided, however, that the decisions of the Court of Appeals may be reviewed by the Supreme Court if a majority of the Justices of said Court orders the issuance of a writ of certiorari."

The restrictive language of Art. 9, § 20 insofar as it facially limits judicial review of Orders of the Corporation Commission to the Supreme Court must be viewed in the light of the historical perspective of the times in which it was enacted in order to ascertain its true meaning. 16 Am Jur 2d Constitutional Law § 128. In *Austin, Nichols & Co. v. Okl. Cty. Bd. etc.,* Okl., 578 P.2d 1200 (1203) (1978), this Court quoted with approval from *Wimberly v. Deacon,* 195 Okl. 561, 144 P.2d 447 (1944) as follows:

" * * * the meaning of constitutional provisions, as understood by those who framed and adopted the constitution, is to be ascertained and given effect. * * *."

And we added:

"Further a constitutional amendment should be construed in the light of its purpose and given a practical interpretation so that the manifest purpose of the framers and people who adopted it may be carried out (citation omitted)."

At the time of the adoption of Art. 9, § 20 and of its amendment by Laws 1941, p. 544, § 1, there was no Court of Appeals in existence. By virtue of the unique provisions of Art. 7, § 5 and the implementing legislation (T. 20 O.S.1981, §§ 30.1–30.14) the Court of Appeals was created to assist in disposing of civil cases which, however, remained appealable to the Supreme Court, but which could be assigned by the latter— without specific type of case designation or limitation by Constitutional provision or by statute—to the Court of Appeals. The intent of Art. 9, § 20 limitations upon judicial review of Corporation Commission orders was to insure that such orders, when entered, would be accorded the same dignity, finality and sanctity as are accorded similar judgments and appealable orders of the district court. Although the Supreme Court has not by rule specifically determined the criteria by which cases appealed to it are assigned to the Court of Appeals, the Court has provided by Rules (Rules on Practice and Procedure in the Court of Appeals and on Certiorari to that Court, T. 12 O.S.1981, Ch. 15, App. 3) the grounds by which a litigant, feeling himself aggrieved by a decision of the Court of Appeals, may petition the Supreme Court to grant certiorari to the Court of Appeals to review a decision of that court. We deem our present rules and procedures are such as to provide adequate safeguards of the constitutional authority in the Supreme Court to review orders of the Corporation Commission.

We therefore hold that it is within the constitutional and statutory powers of the Supreme Court to assign to the Court of Appeals cases appealed to the Supreme Court of the State of Oklahoma from orders of the Oklahoma Corporation Commission affecting rates, charges, classifications of traffic, and rules and regulations of transportation and transmission companies doing business in the State of Oklahoma.

## II.

The Oklahoma Constitution, Art. 9, § 18 provides:

"The Commission shall have the power and authority and be charged with the duty of supervision, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor .... All rates, charges, classifications, rules and regulations adopted or acted upon by any such company, inconsistent with those prescribed by the Commission, within the scope of its authority, shall be unlawful and void."

The power and authority of the Commission is not only thus established, the duty of the Commission to supervise, regulate and control the charges and rates of public utilities is constitutionally mandated. *Oklahoma Gas & Electric Co. v. Wilson & Co.,* 146 Okl. 272, 288 P. 316 (1930) (Syllabus 4 by the Court).

In *Anderson v. Grand River Dam Authority,* Okl., 446 P.2d 814 (818) (1968), we quoted with approval from American Jurisprudence and Corpus Juris Secundum as follows:

"In 2 Am.Jur.2d Administrative Law, § 222 it is said:

'It is a general principle of law, expressed in the maxim "delegatus non protest delegare", that a delegated power may not be further delegated by the person to whom such power is delegated and that in all cases of delegated authority, where personal trust or confidence is reposed in the agent and especially where the exercise and application of the power is made subject to his judgment or discretion, the authority is purely personal and cannot be delegated to another * * *. A commission, charged by law with power to promulgate rules, cannot in turn, delegate that power to another.'

"In 73 C.J.S. Public Administrative Bodies and Procedure § 57, it is said:

'Administrative officers and bodies cannot alienate, surrender, or abridge their powers and duties, or delegate authority and functions which under the law may be exercised only by them; and, although they may delegate merely ministerial functions, in the absence of statute or organic act permitting it, they cannot delegate powers and functions which are discretionary or quasi-judicial in character, or which require the exercise of judgment.'"

■ We conclude from the foregoing that the duty to regulate rates enjoined upon the Commission may not be delegated by the Commission to a regulatory body of another state. But having so determined, there remains the question of whether under the facts and circumstances of the case at bar, the Commission did in fact abrogate or delegate its regulatory duty to the regulatory authority of another state.

It is significant to observe that the fixing of rate schedules by the Commission is a legislative and not a judicial or quasi-judicial process, and therefore no abrogation of judicial functions or adoption of judicial determinations by commissions of other states is here involved. In *Chickasha Cotton Oil Co. v. Corp. Comm.,* Okl., 562 P.2d 507 (1977), Cert. Den. 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 88, we said:

"This Court has repeatedly held that the power to fix rates in Oklahoma is a legislative function. In *Wiley v. Oklahoma Natural Gas Company,* 429 P.2d 957 (Okl.1967), it was asserted that certain rate increases were void because the Commission was influenced by contributions and favors received from a lobbyist of the gas company. We said:

'It is universally recognized that the fixing of rate schedules for public utilities is a legislative process, and that a public service regulatory body acts in a legislative capacity in approving rate schedules.'"

■ A careful examination of the process by which rates are established in the case before us reveals that the Commission has neither abrogated its duty nor delegated it to another forum. The Commission has by

classification order established rates for Oklahoma users which under prescribed conditions are determined by the Oklahoma Corporation Commission to be the same as established by the adjoining state's regulatory body for users in the adjoining state. The reasonableness of the rates thus established is not here challenged as, for example, it was in *Southwestern Public Service Co. v. State,* Okl., 637 P.2d 92 (1981). It is therefore the reasonableness of the *method* by which the Commission has established the rates for Oklahoma users that is here assailed.

In the case of *Western Oklahoma Gas & Fuel Co. v. State,* 113 Okl. 126, 239 P. 588 (591) (1925), this Court said:

"The rate-fixing power is legislative, whether it be exercised by the Legislature itself or by some other agency created by law for that purpose, and is subject to review by the courts.

" * * * in the last analysis an order of the Corporation Commission fixing rates is entitled to the same consideration as if the Legislature had fixed them, there being no distinction except in the *method* of procedure. If the rate is fixed by the Legislature and is challenged, the facts must be developed in the courts, while in a proceeding to fix rates by the Commission the facts must be developed there." (Emphasis added.)

In *Hixon v. Snug Harbor Water and Gas Company,* Okl., 381 P.2d 308 (1963), this Court had for consideration an appeal from an order of the Corporation Commission entered in a "rate case" before the Commission. We there held that the Commission had authority to apply special rules and regulations to an application for an increase in water rates in an area which was sparsely settled and rural in character.

Neither the Constitution of the State of Oklahoma, Art. 9 § 18, nor the statutes of the State of Oklahoma, 17 O.S.1981, § 152, prescribe any particular or specific form of evidentiary hearing in fixing and establishing rates in public utility cases, and no such procedural requirement by rules established by the Commission itself has been called to our attention.

Under the particular circumstances present in the case before us, we find that the method employed by the Commission was neither unreasonable nor arbitrary. The Oklahoma-sitused users in the case of each telephone company to which the Commission's order applies is both numerically small and proportionately small in relation to the non-Oklahoma sitused customers, thus constituting special circumstances as in *Hixon v. Snug Harbor Water and Gas Company, supra.* To require a full-fledged hearing before the Commission in order to establish rates for the Oklahoma customers would be, in result, to saddle them with ultimate payment of not only the expense of the hearing in the sister state to establish rates, but with the added expense of the Oklahoma Corporation Commission hearing to fix the rate in Oklahoma, thus imposing upon the Oklahoma customers a higher rate than that enjoyed by users in the sister state. We further observe that the conditions and safeguards built into the Commission's Order are such that it would appear extremely unlikely that such a full-fledged Commission hearing would produce a rate more favorable to either the company or its customers than that produced by application of the Commission Order.

The Attorney General argues that the Order of the Commission is contrary to Art. 9, § 22 of the Oklahoma Constitution. In the case of *Southwestern Public Service Co. v. State,* Okl., 637 P.2d 92 (100) (1981), we said:

"The mandate of the Constitution, Art. IX § 22 is threefold, i.e., (1) the Commission shall file with the record on appeal and as a part thereof a written statement of the reasons upon which the action appealed from was based; (2) the Commission must make findings of fact; and (3) the Chairman of the Commission shall certify to the Supreme Court all the facts upon which the action appealed from was based, and which may be essential for the prompt decision of the appeal."

We do not perceive any impossibility of compliance with the Constitutional requirements inherent in the Commission's Order. The basis upon which the Commission fixes

the utility's rates is prescribed in the Order, and whether the methods used by the Commission are in compliance with the order may be adequately preserved for judicial review.

In the absence of a statutory provision to the contrary, constitutional due process and the requirement of full hearing do not preclude the consideration by the members of a fact finding agency of evidence and conclusions reached in proceedings not conducted in the personal presence of the members of the fact finding agency, *provided that the individual members of the fact finding agency in making its determination may and do consider and appraise the evidence which justified the conclusions reached by the fact finder made outside the presence of the determining body. Morgan v. United States,* 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936); *Knapp v. State Industrial Com.,* 195 Okl. 56, 154 P.2d 964 (1944); 18 ALR 2d 608.

Title 17 O.S.1981, § 162 specifically authorizes the Commission to employ examiners with power to examine witnesses, receive evidence and make reports to the Commission. In *Cameron v. Corporation Commission,* Okl., 414 P.2d 266 (272) (1966), we said: "The statute, supra, does not attach any particular weight or significance to the Examiner's report. Regardless of whatever weight the Commission may attach to the report, *the Commission is the final arbiter of the issues.*" It is our opinion that, under these circumstances, the report of the Examiner is entitled to no special weight in this court in determining whether the order of the Commission is supported by substantial evidence." (Emphasis supplied.) In accord, *State ex rel. Cartwright v. Okl. Natural Gas,* 640 P.2d 1341 (1345–6) (1982).

In the case before us, the findings and determinations of the regulatory body of the sister state are subject to review by the Commission which has full opportunity to determine the weight to be given them, but in the final analysis, it is the Oklahoma Corporation Commission which fixes the rate for Oklahoma users, and not the regulatory body of the sister state.

Finally, the Attorney General urges that the Order of the Commission is defective in that, "the only way to get Commission scrutiny of the foregoing rate order is to file a complaint and request a hearing." The argument of the Attorney General is without merit. In *Chickasha Cotton Oil Co. v. Corp. Comm., supra,* we said:

"We hold that the Corporation Commission was acting in a legislative capacity when it restructured the rates with which we are here concerned and was not required to give judicial due process notice and hearing to the Petitioners (users), unless specifically required by statute. There is no present statutory provision requiring notice."

Accord, *State ex rel. Oklahoma Natural Gas Co. v. Hughes,* Okl., 227 P.2d 666 (669) (1951).

The Order of the Oklahoma Corporation Commission is hereby affirmed.

IRWIN, DOOLIN, HARGRAVE, OPALA and WILSON, JJ., concur.

SIMMS, V.C.J., concurs in I and dissents to II.

HODGES, J., disqualified.