MEDICINE PARK TELEPHONE CO. v. OKLAHOMA CORPORATION COMMISSION



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:MEDICINE PARK TELEPHONE CO. v. OKLAHOMA CORPORATION COMMISSION

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 MEDICINE PARK TELEPHONE CO. v. OKLAHOMA CORPORATION COMMISSION
2019 OK 21
Case Number: 115453
Decided: 04/16/2019
As Corrected: April 18, 2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 21, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 



IN THE MATTER OF THE APPLICATION OF MEDICINE PARK TELEPHONE COMPANY FOR FUNDING FROM THE OKLAHOMA UNIVERSAL SERVICE FUND
MEDICINE PARK TELEPHONE COMPANY, Appellants,
v.
OKLAHOMA CORPORATION COMMISSION and STATE OF OKLAHOMA, Appellees.

APPEAL FROM OKLAHOMA CORPORATION COMMISSION CAUSE NO. PUD 201500444
Bob Anthony, Chairman; Dana Murphy, Vice Chairman; and Todd Hiett, Commissioner.

¶0 Medicine Park Telephone Company appeals the Oklahoma Corporation Commission's denial of its application for reimbursement from the Oklahoma Universal Services Fund for reasonable investments and expenses incurred in providing primary universal service to its customers. We find that the Commission's wholesale denial of the reimbursement of any of the requested funds is in error and vacate the Commission's ruling and remand with directions.

ORDER OF THE OKLAHOMA CORPORATION COMMISSION REVERSED
AND REMANDED WITH INSTRUCTIONS.

William H. Hoch, Melanie Wilson Rughani, Crowe & Dunlevy, P.C., Oklahoma City, Oklahoma, and Ron Commingdeer, Kendall W. Parrish, Ron Commingdeer & Associates, Oklahoma City, Oklahoma, for Appellants.
Michele Craig, Deputy General Counsel, Oklahoma Corporation Commission, Oklahoma City, Oklahoma, for Appellees.
Nancy M. Thompson, Oklahoma City, Oklahoma, for Sprint Communications Company, L.P., Sprint Spectrum L.P. and Virgin Mobile USA, L.P.
Jack G. Clark, Jr., Clark, Wood & Patten, P.C., Oklahoma City, Oklahoma, for Verizon.


WINCHESTER, J.:
¶1 The issue before this Court is whether the Oklahoma Corporation Commission ("the Commission") erroneously withheld funding to be provided to Medicine Park Telephone Company ("Medicine Park") pursuant to the provisions of the Oklahoma Universal Service Fund ("OUSF"), 17 O.S.Supp.2016, § 139.106. For the reasons set forth herein, we find that Medicine Park is entitled to the requested funding.
STATUTORY BACKGROUND
¶2 In 1996, the U.S. Congress passed the federal Telecommunications Act, 47 U.S.C. §§ 151 et seq., in part, to promote a policy of universal service that would provide telecommunications services to consumers all over the country, including "those in rural, insular, and high cost areas." The Act seeks to provide access to services that are "reasonably comparable to those services provided in urban areas and that are available at rates that are reasonably comparable to rates charged for similar services in urban areas." 47 U.S.C. § 254(b)(3). The Oklahoma Legislature followed suit with its own, complementary Oklahoma Telecommunications Act of 1997 (the "Act"). 17 O.S.2011 and Supp.2016, §§ 139.101 et seq.
¶3 Under the state and federal Acts, certain telecommunications providers known as "carriers of last resort" are required to provide, without discrimination, telephone service to any customer requesting it. See 47 U.S.C. § 201; 17 O.S.Supp.2016, §139.106. In addition, the provider must offer the requested services at reasonable and affordable rates in line with those offered in more urban areas even if serving such customers would not be economically sustainable. See 47 U.S.C. § 202; 47 U.S.C. § 254(b)(3), (g), (i). The purpose of the legislation was to provide affordable and quality primary universal services to all despite the challenges of its accessibility.
¶4 In an effort to defray the costs of delivering phone service in rural, more remote areas, the federal and state Acts each established a fund to help support eligible service providers. Within Oklahoma's Act, the Legislature created the OUSF to help pay for reasonable investments and expenses incurred by "eligible local exchange telecommunications service providers" in providing primary universal services to customers in rural and high-cost areas "at rates that are reasonable and affordable." See 17 O.S.Supp.2016, § 139.106(A), (B), and (G).
¶5 The OUSF generally provides that an eligible provider "may request funding from the OUSF as necessary to maintain rates for primary universal services that are reasonable and affordable." 17 O.S.Supp.2016, § 139.106(G). The OUSF is funded by a charge paid by certain telecommunications carriers that have revenues as defined in Section 139.107. See 17 O.S.Supp.2016, §§ 139.106(D) and 139.107.[1]
¶6 The Commission's rules governing the process for obtaining funding from the OUSF are set out in OAC 165:59, Part 9 and are overseen by the Administrator of the Commission's Public Utilities Division ("PUD"). Under the rules, upon receipt of a request for OUSF funding, the OUSF Administrator reviews the request and, if appropriate, reimburses the provider consistent with the Act. OAC 165:59-7-1(d) and OAC 165:59-3-62(g). Requests for Subsection (G)'s "as necessary" distributions are evaluated through a detailed study and analysis of the "costs of providing primary universal services" as well as potential revenue. 17 O.S.Supp.2016, § 139.106(H). The process of providing such detailed studies and demonstrating their effect on rates has made Subsection (G) requests for funding time-consuming and expensive.[2]
¶7 The Commissioners are free to approve or reject any determination by the OUSF Administrator. Under the rules, if no one objects to the Administrator's determination, an order approving the funding request is issued by the Commission. OAC 165:59-3-62(j). If, however, a party is not satisfied with the OUSF Administrator's determination, the party may file a request for reconsideration by the Commission and the matter is set for hearing. OAC 165:59-3-62(h) and (i). The Commission is the ultimate arbiter of the issues. See, Cameron v. Corporation Com 'n, 1966 OK 75, ¶29, 414 P.2d 266, 272 (on appeal from an oil and gas spacing order, the Court noted that regardless of whatever weight the Commission may attach to an examiner's report, "the Commission is the final arbiter of the issues"). See also, State ex rel. Cartwright v. Southwestern Bell Telephone Co., 1983 OK 40, ¶32, 662 P.2d 675, 681 (quoting Cameron).
 
¶8 The Commission, by a 2-1 vote, denied reimbursement. Commissioner Dana Murphy, dissenting in each of these companion cases, has stated that although she may not agree with the need for the fund, she feels she must uphold the Legislature's will as long as the fund exists.[3]
¶9 In 2014, the Commission denied a request for OUSF funding from Dobson Telephone Company. See Dobson Telephone Co. v. State ex rel. Okla. Corporation Comm., 2017 OK CIV APP 16, 392 P.3d 295. Dobson sought reimbursement, under 17 O.S.Supp.2016 (K)1)(b), for costs incurred to relocate its telephone facilities as required by the city of Oklahoma City for a street-widening project. Because the request had been issued by the city, and not the county commission or ODOT, the Commission narrowly interpreted the statute and concluded that the Fund was not authorized to pay for such relocation costs.
 
¶10 The Court of Civil Appeals found that the Commission's interpretation of the statutory language defeats the purpose of the Fund and is contra to the legislative intent to defray increased costs incurred by eligible telecommunications service providers resulting from government action, no matter the originating government entity. Dobson Telephone Co. v. State ex rel. Okla. Corporation Comm., 2017 OK CIV APP 16, ¶21, 392 P.3d 295, 305. The Commission's Order was vacated and the matter was remanded for further proceedings consistent with the Court of Civil Appeals opinion. Dobson Telephone Co. v. State ex rel. Okla. Corporation Comm., 2017 OK CIV APP 16, ¶23, 392 P.3d 295, 305. This Court approved the case for publication.
FACTUAL BACKGROUND
¶11 Medicine Park provides telecommunications services to customers in a rural area of southwestern Oklahoma. Pursuant to 17 O.S.Supp.2016, § 139.106(G), Medicine Park submitted an application to the Commission for an "as necessary" reimbursement from the OUSF. The company indicated that it had incurred a revenue deficiency as a result of the growing expense of maintaining its service obligations to its customers, combined with the added costs of continued compliance with Federal Communications Commission (FCC) mandates. Medicine Park indicated that it calculated its funding request, in conformance with Subsection (H)(1) of the OUSF, using its most recent annual cost study, which was based on its calendar year 2014 financial data. To avoid substantially raising its customers' rates, Medicine Park asked for a lump-sum reimbursement from the OUSF of $1,046,188.00, for calendar year 2014, and a monthly recurring amount of $87,182.33, payable beginning January 1, 2015.
¶12 Medicine Park's application went through several rounds of review and supplementary submissions to PUD. The Administrator initially recommended denial of Medicine Park's request for funding stating there was insufficient documentation upon which to base its decision. Thereafter, Medicine Park filed a Request for Reconsideration and supplied the requested, additional information to PUD. Sprint and Verizon (collectively hereafter "Sprint") entered appearances in the case to contest Medicine Park's entitlement to the requested funding. On May 13, 2016, based on the information provided to date, the Administrator filed an Amended Determination in which he recommended a lump sum of $135,935.00 and a recurring monthly amount of $11,327.89. Sprint filed a Request for Reconsideration of the Determination arguing against any funding.
¶13 On May 31, 2016, Medicine Park filed its Second Request for Reconsideration and reduced the amount of its requested funding to $671,373 for 2014 and a recurring monthly amount of $55,947. Shortly thereafter, the company again provided additional information to PUD, including the direct testimony of Medicine Park President, Edward E. Hilliary. According to Medicine Park, this testimony was filed to more clearly reflect how Medicine Park's investments and expenses were incurred.
¶14 On July 14, 2016, PUD filed testimony of its Regulatory Manager, James L. Jones, and of David G. Winter, an expert regulatory consultant whom PUD hired to perform an independent examination of Medicine Park's application. At that time, Mr. Winter recommended a slightly increased amount of funding in the amount of $145,696.49 for 2014 support, and $12,141.27 in recurring support thereafter. Mr. Jones agreed with Mr. Winter's assessment and PUD expressly determined that Medicine Park's rate for primary universal services was reasonable and affordable.
¶15 On August 15, 2016, after considering the testimony of Mr. Hilliary, both Mr. Jones and Mr. Winter filed supplemental testimony and exhibits, respectively. Following the in-depth review of Medicine Park's application and supporting testimony, including a review of all documentation by a neutral, independent consulting firm hired by PUD, the PUD Administrator ultimately recommended that Medicine Park receive a lump-sum payment of $309,016.90 for calendar year 2014, and monthly recurring payments of $25,751.41, to begin January 1, 2015. Despite the recommendation from the PUD Administrator and the outside consulting firm independently hired by PUD to assist in the process, the Commission rejected the Administrator's final determination. By a vote of 2-1, following a two-day hearing on the merits, the Commission denied Medicine Park's application in full. The Commission found that Medicine Park included requests for reimbursement of expenses and investments that were not incurred entirely for the provision of primary universal services, that the Administrator did not determine whether Medicine Park's rates for primary universal services were reasonable and affordable, that the company did not seek alternative funding, and that recurring funding should not be awarded. As a result, Medicine Park filed this appeal seeking review of the Commission's order and we retained jurisdiction.
STANDARD OF REVIEW
¶16 This Court's review of decisions of the Commission is governed by the Oklahoma Constitution, article 9, § 20, which states as follows, in relevant part:
The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only, and in all appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts. In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence.
Okla. Const. art. 9, § 20.
¶17 The issue in this appeal concerns the Commission's legal interpretation of the OUSF statute and the alleged arbitrary and capricious denial of funding in violation of the Oklahoma Constitution. Constitutional implications as well as statutory interpretation require us to review this case de novo. Cox Oklahoma Telecom, LLC v. State ex rel. Oklahoma Corp. Comm'n, 2007 OK 55, ¶9, n.17, 164 P.3d 150, 156. Under the de novo standard of review, the Court has plenary, independent and non-deferential authority to determine whether the trial tribunal erred in its legal rulings. Cox Oklahoma Telecom, LLC v. State ex rel. Oklahoma Corp. Comm'n, 2007 OK 55, ¶9, n.16, 164 P.3d 150, 156; Neil Acquisition v. Wingrod Investment Corp., 1996 OK 125, ¶5, 932 P.2d 1100, 1103; Fanning v. Brown, 2004 OK 7, ¶8, 85 P.3d 841, 845.
¶18 This Court has found that the Commission's power "must be exercised only within the confines of its limited jurisdiction as provided by the Oklahoma Constitution" and state statute.[4] Pub. Serv. Co. v. State ex rel. Corp. Comm'n, 1997 OK 145, ¶23, 948 P.2d 713, 717. The Commission's "power to regulate is not unfettered." Pub. Serv. Co. v. State ex rel. Corp. Comm'n, 1996 OK 43, ¶21, 918 P.2d 733, 738.
DISCUSSION
¶19 In support of its decision to disallow any funding to Medicine Park, two of the three members of the Commission found that Medicine Park: (1) included expenses that were not related to primary universal services as set forth in the OUSF statutory provisions; (2) failed to substantiate the reasonableness and necessity of its claimed expenses; (3) did not first seek alternative funding or substantiate the reasonableness of its rate for primary service; and (4) failed to show the propriety of recurring funding under the OUSF provisions.
¶20 Medicine Park contends that the Commission's complete denial of funding disregards the very purpose of the OUSF to ensure the availability of affordable telephone service to customers in rural and high cost areas where, absent the subsidies, their provision would be cost-prohibitive. Medicine Park argues the Commission: (1) too narrowly interprets the OUSF statute; (2) erroneously imposed an alternative funding requirement on Medicine Park contrary to the OUSF statute; (3) incorrectly denied Medicine Park's request for recurring funding; and (4) erred in finding the 2016 amendments to 139.106(D) are not retroactively applicable here.[5]
¶21 Medicine Park asserts that the process for reimbursement under Subsection (G) can be time-consuming and extremely expensive. It sought OUSF funding due to the growing expense of maintaining service obligations to its residential and business customers, combined with the added cost of continued compliance with FCC mandates which resulted in a revenue deficiency.
 
¶22 Medicine Park filed its application for funding pursuant to Section 139.106 (G)(1) and (2) of the Act. Subsection (G) provides that an eligible provider may request funding "as necessary to maintain rates for primary universal services that are reasonable and affordable." 17 O.S.Supp.2016, § 139.106 (G). The Commission does not dispute that Medicine Park is an eligible provider. The statute further states, in part, that such funding "shall be provided" to eligible providers for the following:
(1) To reimburse eligible local exchange telecommunications service providers for the reasonable investments and expenses not recovered from the federal universal service fund or any other state or federal government fund incurred in providing universal services;
(2) Infrastructure expenditures or costs incurred in response to facility or service requirements established by a legislative, regulatory, or judicial authority or other governmental entity mandate.
17 O.S.Supp.2016, § 139.106 (G)(1) and (2)(emphasis added).[6]
¶23 In paperwork submitted with its application for funding, Medicine Park indicated that because it is operating at a revenue deficiency, it must receive increased revenues in order to continue to provide adequate and reliable regulated telephone service and earn a fair and reasonable rate of return on its investment devoted to intrastate regulated public utility business. Without OUSF funding, the company indicated it would be forced to increase the rates of its customers. Medicine Park calculated its funding request according to its most recent annual cost study which was based on 2014's calendar year financial data. It compiled the information in conformance with Subsection (H)(1) which provides the procedure by which an eligible service provider must identify and measure the costs of providing primary universal services when seeking OUSF funding. 17 O.S.Supp.2016, § 139.106(H)(1).[7]
¶24 Medicine Park urges that 17 O.S.Supp.2016, § 139.106(G) mandates a distribution of OUSF funds to an eligible service provider who requests funding, as Medicine Park did here, "as necessary to maintain rates for primary universal services that are reasonable and affordable." Medicine Park states that its request covered eligible costs used in the provision of primary universal services as that term is broadly defined in the Act:
 
"Primary universal service" means an access line and dial tone provided to the premises of residential or business customers which provides access to other lines for the transmission of two-way switched or dedicated communication in the local calling area without additional, usage-sensitive charges, including:

a. a primary directory listing,
b. dual-tone multifrequency signaling,
c. access to operator services,
d. access to directory assistance services,

e. access to telecommunications relay services for the deaf or hard-of-hearing,
f. access to nine-one-one service where provided by a local governmental authority or multijurisdictional authority, and

g. access to interexchange long distance services.
17 O.S.Supp.2016, § 139.102 (35).[8] The statutory definition expressly includes several services that are used for both intrastate and interstate services, such as access to operator services, access to directory assistance services, access to directory assistance services, and access to interexchange long distance services within the scope of available services to be funded by the OUSF. Thus, the Commission has too narrowly interpreted the costs recoverable under the OUSF.
¶25 Medicine Park's cost study, prepared in conformance with Subsection (H)(1), and in accordance with FCC rules, allocated out of its study all non-regulated costs and then further separated costs between interstate and intrastate jurisdictions. Using this method allowed Medicine Park to isolate intrastate costs which were used in the provision of primary universal services and are the specific costs for which the company stated it was requesting OUSF recovery. The Administrator, and the independent expert, after reviewing the entirety of Medicine Park's documentation and information, reduced Medicine Park's recovery even further to ensure only validly incurred expenses and/or investments were reimbursed.
¶26 The primary question regarding Medicine Park's entitlement to the funds, requested under Subsection (G)(1) and (2), concerns whether the funds were for (1) reasonable investments and expenses not recovered elsewhere, and/or (2) infrastructure costs incurred as a result of facility or service requirements. The Commission argues that the words "request funding necessary to maintain rates that are reasonable and affordable" require it to make "relative comparisons, exercise critical judgment, weigh relevant factors, and make judgment calls." However, the plain language of the statute simply requires the Commission, through the Administrator, to verify through review of the provider's application and supporting documentation, that the monies sought by the provider were incurred in the furtherance of providing reasonable primary universal services. 17 O.S.Supp.2016, § 139.106 (B) and (G).
¶27 After conducting a thorough review of all of Medicine Park's supporting documents, exhibits, and testimony, the PUD Administrator and Mr. Winters, the expert regulatory consultant for the independent consulting firm hired by PUD, each separately concluded that Medicine Park was entitled to some amount of OUSF reimbursement. Briefing filed by PUD in the proceedings below indicated that because Medicine Park pursued funding pursuant to Subsection (G), the Administrator had to consider and determine whether Medicine Park's rate for primary universal service was reasonable. In reaching his determination that the request, as modified, was reasonable, the Administrator testified that he "had to review all books and records of Medicine Park to determine whether the revenues of Medicine Park are sufficient, when unreasonable expenses are removed, to maintain rates for primary universal service that are reasonable and affordable." Without such a review, the Administrator maintained that he could not have reached his decision. Further, the Administrator specified that he restricted his recommendation to allow only for funding of costs and expenses associated with primary universal service. Likewise, Mr. Winters reached the same conclusion. While both witnesses approved an amount less than Medicine Park requested, they each agreed that their final recommendation constituted a reasonable amount that would allow the company to continue to provide reasonable and affordable service to its customers. Despite finding Medicine Park's rate for primary universal services "reasonable and affordable," the two-member majority of the Commission rejected the PUD Administrator's findings, without any supported basis and contrary to the very purpose of the OUSF.
¶28 The Commission's argument that Medicine Park was required to seek alternative funding is not well-taken. In its application, Medicine Park provided information to the Commission that included revenues received by Medicine Park from the Oklahoma High Cost Fund. The Administrator properly excluded these funds from his recommendation. Medicine Park did not receive funding from any other source that would be the subject of an exclusion.
¶29 Additionally, PUD asserts that "even if Medicine Park mistakenly receives funding from the OUSF for a cost for which it has already received funding, then the double funding will be recovered by the OUSF," pursuant to OAC 165:59-3-62(d). This agency rule provides: "If a provider receives funding from alternative funding sources for an investment or expense already reimbursed by the OUSF, the provider shall refund the double collection to the OUSF by either reducing a prospective funding request from the OUSF by an equivalent amount or remitting cash payment to the OUSF. Under no circumstances will double recovery be allowed." OAC 165:59-3-62(d). Thus, the Commission's fear of double recovery from alternative funding is not realistic.
¶30 Finally, the Commission ignored the Administrator's specific recommendation for recurring funding stating that such funding is not available when there is no showing of ongoing revenue needs. The Administrator and Mr. Winters both recommended recurring funding as the revenue needs for Medicine Park were documented to be ongoing. Nothing in the statute or Commission rules limits recovery to a single past period where a continued need exists and we decline to impose such a condition here.[9]
 
CONCLUSION
 
¶31 Although the Commission is not bound by the Administrator's recommendation, we find that the record reflects ample evidence with which to support the Administrator's determination. The Administrator, the independent expert hired by PUD to provide a neutral investigation, and one dissenting Commissioner all agreed that Medicine Park was entitled to funding, albeit at a reduced rate of its initial request. The Commission's wholesale denial of any funding was in error. Where an eligible provider has followed the statutorily-established process and submitted valid, supporting documentation, OUSF funding is required when such funding is needed to ensure the availability of primary universal service at rates that are reasonable and affordable. We find the Commission has misinterpreted the language and requirements of the OUSF Act and, as such, we vacate the order of the Commission and remand the cause for further proceedings consistent with this opinion.
ORDER OF THE OKLAHOMA CORPORATION COMMISSION VACATED AND REMANDED.

CONCUR: GURICH, C.J., KAUGER, WINCHESTER, EDMONDSON, and DARBY, JJ.
CONCURRING SPECIALLY (by separate writing): COMBS, J.
NOT PARTICIPATING: COLBERT, AND REIF, JJ.

FOOTNOTES

[1] Section 139.107 provides, in part:
A. The Oklahoma Lifeline Fund (OLF) and the Oklahoma Universal Service Fund (OUSF) shall be funded in a competitively neutral manner not inconsistent with federal law by all contributing providers. The funding from each contributing provider shall be based on the total intrastate retail Oklahoma Voice over Internet Protocol (VoIP) revenues and intrastate telecommunications revenues, from both regulated and unregulated services, of the contributing provider, hereinafter referred to as assessed revenues, as a percentage of all assessed revenues of the contributing providers, or such other assessment methodology not inconsistent with federal law. VoIP services shall be assessed only as provided for in the decision of the Federal Communications Commission, FCC 10-185, released November 5, 2010, or such other assessment methodology that is not inconsistent with federal law. The Commission may after notice and hearing modify the contribution methodology for the OUSF and OLF, provided the new methodology is not inconsistent with federal law.
B. The Corporation Commission shall establish the OLF assessment and the OUSF assessment at a level sufficient to recover costs of administration and payments for OUSF and OLF requests for funding as provided for in the Oklahoma Telecommunications Act of 1997. The administration of the OLF and OUSF shall be provided by the Public Utility Division of the Commission. The administrative function shall be headed by the Administrator as defined in Section 139.102 of this title. The Administrator shall be an independent evaluator. The Administrator may enter into contracts to assist with the administration of the OLF and OUSF.
17 O.S.Supp.2016, § 139.107. "Contributing provider" as that term is used in § 139.107 means "providers, including but not limited to providers of intrastate telecommunications, providers of intrastate telecommunications for a fee on a non-common-carrier basis, providers of wireless telephone service and providers of interconnected Voice over Internet Protocol (VoIP). Contributing providers shall contribute to the Oklahoma Universal Service Fund and Oklahoma Lifeline Fund." 17 O.S.Supp.2016, § 139.102 (8).

[2] In an effort to help defray certain costs and shorten the time to receive reimbursement, in limited circumstances, the OUSF offers funding to smaller providers serving rural areas through a much less tedious process. See 17 O.S.Supp.2016, § 139.106 (K). There are six additional cases, made companions to the case herein, in which the providers sought funding under Subsection (K). In Case Nos. 116,193, 116,194, 116,214, 116,215, 116,421, and 116,422, the Commission, by a vote of 2-1, denied each of those requests.

[3] In the Subsection (K) companion cases, which we also decide today, Commissioner Murphy wrote, in dissent, stating that she didn't believe the majority decision "comports with the Oklahoma Legislature's intent to, in part, provide support to small, rural carriers who have experienced increases in costs as a result of changes required by governmental acts and with the Legislative policy to preserve and advance universal services."

[4] The Oklahoma Constitution, art. 9, Section 18 specifies that the Commission has:
the power and authority and [is] charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies; and to that end the Commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations, and requirements, the Commission may, from time to time, alter or amend.

[5] Medicine Park argued that under recently amended 17 O.S.Supp.2016, § 139.106(D)(5), "the failure of the Commission to issue a final order within 30 days from the date of the request for reconsideration meant that Medicine Park's application for OUSF funding was now deemed approved on an interim basis." We disagree with Medicine Park that the provisions of the amended statute are applicable herein. Because we find the amended statute is not purely procedural, its application should be deemed prospective. Barnhill v. Multiple Injury Trust Fund, 2001 OK 114, ¶16, 37 P.3d 890, 898. Regardless, our ruling today makes this issue moot.

[6] We have interpreted the use of the word "shall" by the Legislature "as a legislative mandate equivalent to the term 'must', requiring interpretation as a command." Minie v. Hudson, 1997 OK 26, ¶7, 934 P.2d 1082, 1086.

[7] Subsection (H) provides, in toto:
H. In identifying and measuring the costs of providing primary universal services, exclusively for the purpose of determining OUSF funding levels under this section, the eligible local exchange telecommunications service provider serving less than seventy-five thousand access lines shall, at its option:
1. Calculate such costs by including all embedded investments and expenses incurred by the eligible local exchange telecommunications service provider in the provision of primary universal service, and may identify high-cost areas within the local exchange area it serves and perform a fully distributed allocation of embedded costs and identification of associated primary universal service revenue. Such calculation may be made using fully distributed Federal Communications Commission parts 32, 36 and 64 costs, if such parts are applicable. The high-cost area shall be no smaller than a single exchange, wire center, or census block group, chosen at the option of the eligible local exchange telecommunications service provider; or
2. Adopt the cost studies approved by the Commission for a local exchange telecommunications service provider that serves seventy-five thousand or more access lines; or
3. Adopt such other costing or measurement methodology as may be established for such purpose by the Federal Communications Commission pursuant to Section 254 of the federal Telecommunications Act of 1996.
17 O.S.Supp.2016, § 139.106 (H).

[8] Further, the term "access line," as used in the definition of primary universal services, means "the facilities provided and maintained by a telecommunications service provider which permit access to or from the public switched network or its functional equivalent regardless of the technology or medium used." 17 O.S.Supp.2016, § 139.102(1).

[9] Medicine Park further argues that the Commission had previously allowed recurring reimbursements in previous cases to other providers. The Administrator's recommendation for recurring payments would appear to support this interpretation.




COMBS, J., concurring: 
¶1 I concur in the majority opinion but write separately to emphasize the audacity of the Commission's blanket denial of Appellant's, Medicine Park Telephone Company, application. The legislature established a process by which a rural provider with limited resources is allowed to be reimbursed from the Oklahoma Universal Service Fund (OUSF) when the rural provider meets increased costs in fulfilling a mandate to provide reliable and affordable telephone service to Oklahomans in remote and underserved areas. The Commission's majority all but ignored the evidence presented ostensibly because of a fundamental disagreement with the Oklahoma Universal Service Fund.[1] This is nothing more than an attempt to further disenfranchise rural Oklahoma from basic telephone services.
¶2 Additionally, I would not have allowed Verizon and its related entities and Sprint Communications Company and its related entities to participate in this proceeding below or on appeal. Both Verizon and Sprint are participating based upon their opposition to the funding provided by the Oklahoma Universal Service Fund to rural Oklahoma providers. Neither of these companies had any substantive rights at the time they joined these proceedings.[2]

FOOTNOTES

[1] Appellant's Brief in Chief at 1, January 29, 2018, states "Commissioner Bob Anthony has repeatedly spoken out against the law [17 O.S. § 139.101 et seq.], even going so far as to ask the Legislature, in writing, to repeal it." He stated the Fund is a bad program that should be repealed. Tr. at 30-31, June 26, 2014, Ok. Sup. Ct. Case No. 113,362. The record also shows the statute was not supported by the Commission. ROA, at 224. Commissioner Murphy, however, dissented against the denial of the request for OUSF funding.

[2] HB 2616 (2016) amended 17 O.S. § 139.106 (D) by including in the term "affected party," "any service provider that pays into the OUSF." This bill became effective on May 9, 2016, almost two months after Verizon and Sprint had filed entries of appearance in the underlying case. The Commission's final order noted it had earlier determined "the amendments in House Bill 2616 adding 17 O.S. §139.106 (D) (5) do not apply to the instant Cause." Final Order Denying Request for OUSF Funding at 12.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2017 OK CIV APP 16, 392 P.3d 295, DOBSON TELEPHONE CO. v. STATE ex rel. OKLA. CORPORATION COMM.
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1997 OK 26, 934 P.2d 1082, 68 OBJ 909, Minie v. Hudson
Discussed
 2001 OK 114, 37 P.3d 890, 72 OBJ 3688, BARNHILL v. MULTIPLE INJ. TRUST FUND
Discussed
 1966 OK 75, 414 P.2d 266, CAMERON v. CORPORATION COMMISSION
Discussed
 2004 OK 7, 85 P.3d 841, FANNING v. BROWN
Discussed
 1996 OK 43, 918 P.2d 733, 67 OBJ 1021, Public Service Co. of Oklahoma v. Oklahoma Corp. Comm.
Discussed
 2007 OK 55, 164 P.3d 150, COX OKLAHOMA TELECOM, LLC v. STATE ex rel. OKLAHOMA CORPORATION COMM'N.
Discussed at Length
 1996 OK 125, 932 P.2d 1100, 67 OBJ 3566, Neil Acquisition, L.L.C. v. Wingrod Investment Corp.
Discussed
 1997 OK 145, 948 P.2d 713, 68 OBJ 3885, PUBLIC SERVICE CO. v. STATE ex rel. CORPORATION COMM.
Discussed
 1983 OK 40, 662 P.2d 675, State ex rel. Cartwright v. Southwestern Bell Telephone Co.
Discussed
Title 17. Corporation Commission
 Cite
Name
Level

 17 O.S. 139.101, Short Title
Discussed
 17 O.S. 139.102, Definitions
Discussed at Length
 17 O.S. 139.106, Oklahoma Universal Service Fund (OUSF)
Discussed at Length
 17 O.S. 139.107, Administration of Funds
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA